SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State v. Santino J. Micelli, a/k/a Santino J. Miceli, a/k/a Santino Miceli** (A-1-12) (070453)

**Argued April 30, 2013 -- Decided August 19, 2013**

**PER CURIAM**

      In this appeal, the Appellate Division panel unanimously determined that the State's evidence of out-of-court photographic identifications of defendant by two police officer witnesses was the result of impermissibly suggestive identification procedures under the first prong of the test articulated by the United States Supreme Court in Manson v. Brathwaite, 432 U.S. 98 (1977), and adopted in State v. Madison, 109 N.J. 223 (1988). The issue is whether the majority of the panel appropriately exercised original jurisdiction to decide that the identification was nonetheless reliable under the second prong of the Manson/Madison test and thus admissible at trial.

      Defendant Santino Micelli was charged with eluding a law enforcement officer. The State's theory of the case was that defendant failed to stop at a driving while intoxicated (DWI) checkpoint despite posted stop signs. Prior to trial, defendant moved to suppress evidence of the out-of-court identifications by police officers, alleging that the procedures used by the investigating detective were impermissibly suggestive and unreliable.

      To determine if the out-of-court identifications were admissible, the trial court conducted a hearing under United States v. Wade, 388 U.S. 218 (1967). Sergeant Kassai testified that while on duty at the DWI checkpoint, he saw a blue Suzuki slowly moving toward the checkpoint, and it then began to accelerate, although there were two stop signs posted. As the Suzuki sped past, Kassai saw the profile view of the driver's face. Detective Kochis testified that he also saw a profile of the face of the driver, a "skinny" white male with long brownish/blonde hair, and wearing eyeglasses. Shortly after the Suzuki sped through the checkpoint, officers found it abandoned. It was registered to defendant's mother and contained letters with defendant's name. At the police station, Kassai and Kochis viewed a photograph of defendant on a computer screen. Lieutenant DePasquale presented defendant's photograph to Kochis and said it was "the person that was possibly driving the car." DePasquale showed the same photograph to Kassai, stating "this is the guy that [Kochis] was looking for, you know what I'm saying?" Both Kochis and Kassai identified defendant as the person who had sped through the checkpoint. DePasquale testified that he used a one-photo identification procedure because, at the time, that was the procedure generally used when the identification was made close to the time of the incident. He also considered the training of the officers.

      At the conclusion of the Wade hearing, the court found that the identification procedures were not impermissibly suggestive, noting that police officers are trained to make observations that a layperson would not be able to make. The court did not reach the second prong of the Manson/Madison test, which focuses on reliability and calls for a balancing of the two prongs. The judge denied defendant's motion to suppress, and the matter proceeded to trial. The jury found defendant guilty of third-degree eluding.

      Defendant appealed. A divided panel of the Appellate Division affirmed the conviction. The panel unanimously determined that the identification procedure used was impermissibly suggestive. The majority exercised original jurisdiction, made factual findings, and weighed the evidence in order to consider the second Manson/Madison prong. Judge Fisher, dissenting, urged a remand to the trial court to conduct a new Wade hearing. Defendant filed an appeal as of right based on that dissent. R. 2:2-1(a)(2).

**HELD**: The reliability of the identifications should have been assessed at a Wade hearing before the trial court.

1. The Manson/Madison test provides a two-step process for determining whether an out-of-court identification is admissible at trial. First, the judge must determine if the out-of-court identification procedure was impermissibly suggestive. If the judge finds that it was not, then the evidence may be admitted at trial. If there is a finding of impermissible suggestiveness, then the court must determine whether the procedure resulted in a very substantial likelihood of irreparable misidentification. This requires the judge to consider the totality of the circumstances and weigh the suggestive nature of the procedure against the reliability of the identification. The evidence may be admitted at trial if the judge finds that the identification procedure was nevertheless reliable despite the

impermissibly suggestive procedure used. To assess reliability, a court considers the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. The factors are to be weighed against the corrupting effect of the suggestive identification. (pp. 8-9)

2. The Appellate Division's exercise of original jurisdiction was incorrect. Rule 2:10-5 permits appellate courts to exercise original jurisdiction, but only with great frugality and to end perpetual or lengthy litigation, but not to weigh evidence anew or make independent factual findings. The Court has exercised original jurisdiction in extraordinary circumstances to assess an issue under the proper legal standard, which did not require resolving credibility issues or subjective evaluations that would otherwise dictate a remand to the trial court. Here, the admissibility of identification evidence requires a careful balancing of the factors outlined in the Manson/Madison test. That process depends largely on a trial judge's assessment of the testimony presented at the hearing. (pp. 9-12)

3. The matter is remanded to the Law Division to conduct a new Wade hearing concerning the second prong of the Manson/Madison test. The Appellate Division's unanimous holding that the identification procedure was impermissibly suggestive under the first prong remains the law of the case. (pp. 12-13)

The judgment of the Appellate Division is **REVERSED IN PART**, and the matter is **REMANDED** to the Law Division for further proceedings consistent with the Court's opinion.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, HOENS, and PATTERSON; and JUDGES RODRÍGUEZ and CUFF (both temporarily assigned) join in this opinion.**

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

       v.

SANTINO J. MICELLI, a/k/a
SANTINO J. MICELI, a/k/a
SANTINO MICELI,

    Defendant-Appellant.


        Argued April 30, 2013 – Decided August 19, 2013

        On appeal from the Superior Court, Appellate
        Division.

        Alison S. Perrone, Designated Counsel,
        argued the cause for appellant (Joseph E.
        Krakora, Public Defender, attorney).

        David A. Malfitano, Assistant Prosecutor,
        argued the cause for respondent (John L.
        Molinelli, Bergen County Prosecutor,
        attorney).

        Deborah C. Bartolomey, Deputy Attorney
        General, argued the cause for amicus curiae
        Attorney General of New Jersey (Jeffrey S.
        Chiesa, Attorney General, attorney; Hillary
        K. Horton, Deputy Attorney General, of
        counsel and on the brief).

PER CURIAM

    This appeal is before us as of right based on a dissent in

the Appellate Division.  R. 2:2-1(a)(2).  We reverse the

judgment of the Appellate Division, which affirmed defendant's

May 21, 2010 conviction for third-degree eluding a police officer, N.J.S.A. 2C:29-2b. We do so because the reliability of the State's evidence of out-of-court photographic identifications of defendant by two police officer witnesses should have been assessed at a Wade[1] hearing before the trial court pursuant to the standard set by this Court in State v. Madison, 109 N.J. 223, 232-33 (1988). The Madison standard applies to this case because the out-of-court identifications were completed prior to our August 24, 2011 decision in State v. Henderson, 208 N.J. 208 (2011).

## I.

Our discussion begins with a review of the salient proofs and relevant procedural steps in this litigation. Defendant Santino Micelli was charged with second-degree eluding a law enforcement officer by failing to stop, N.J.S.A. 2C:29-2b. The State's theory of the case against defendant was that, at around 2:40 a.m. on Saturday, August 23, 2008, defendant drove his mother's Suzuki through a driving while intoxicated (DWI) checkpoint, ignoring posted stop signs. Prior to trial, defendant moved to suppress evidence of the out-of-court identifications by police officers, alleging that the procedures

---

[1] United States v. Wade, 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967).

utilized by the investigating detective were impermissibly suggestive and unreliable.

A Wade hearing is required to determine if the identification procedure was impermissibly suggestive and, if so, whether the identification is reliable.  The trial court conducts a Wade hearing to determine the admissibility of the out-of-court identifications.  State v. Ortiz, 203 N.J. Super. 518, 522 (App. Div.), certif. denied, 102 N.J. 335 (1985).  At the Wade hearing, the State presented the testimony of three Elmwood Park police officers.  Sergeant Michael Kassai testified that, at that early morning hour, he was on duty at the DWI checkpoint at the intersection of Route 46 and Boulevard in Elmwood Park.

Around 2:40 a.m., Kassai saw a blue Suzuki moving at a slow rate of speed in the direction of the checkpoint.  As the Suzuki approached the checkpoint, it began to accelerate.  Although there were two stop signs posted, the Suzuki proceeded through the checkpoint, making an illegal right turn at a red light.  Kassai testified that, as the Suzuki accelerated past him, he saw the side of the driver's face.  Other officers at the scene pursued and attempted to stop the Suzuki, but they were unsuccessful.

Kassai acknowledged that he only had a profile view of the Suzuki's driver as the vehicle sped past.  He testified that,

3

although it was dark, the DWI checkpoint area was well-lit by portable lights.  Kassai admitted that he did not have his flashlight to enhance his vision as the Suzuki passed him.

Detective Thomas Kochis testified that he also was assigned to the DWI checkpoint that night.  He too saw a profile of the driver's face as the Suzuki passed him.  He described the driver as a "skinny" white male in his late thirties/early forties, with long brownish/blonde hair, and wearing eyeglasses.

Shortly after the Suzuki sped through the checkpoint, police officers found it abandoned one half-mile down Route 46.  Kochis searched the Suzuki's interior and found some bills and letters containing defendant's name.  Kochis ran a check on the license plate and determined that the Suzuki was registered to Claire Lune Daniels, defendant's mother.

Subsequently, Kassai and Kochis viewed a photograph of defendant on a computer screen at the Elmwood Park police station.  Lieutenant Brian DePasquale presented defendant's photograph to Kochis and said, "I've got a picture of the person that was possibly driving the car."  DePasquale showed the same photograph to Kassai shortly thereafter, stating "this is the guy that [Kochis] was looking for, you know what I'm saying?  This is the guy that that was involved with Detective [Kochis] with the -- what the -- who he was looking for."  Both Kochis

4

and Kassai identified defendant as the person who had sped through the checkpoint.

DePasquale testified that he used a one-photo identification procedure because, at the time, that was the procedure generally employed when the identification was made in close proximity to the time of the incident. He also considered the training of the officers and the circumstances in which they viewed the driver.

## II.

At the conclusion of the Wade hearing, the judge found that the identification procedures were not impermissibly suggestive. The judge questioned whether Wade principles apply in the absence of a selection at a lineup or from a photographic array. The judge also suggested that police officers are trained observers and, thus, are able to make observations that a layperson would not be able to make. The judge did not reach the second prong of the Manson/Madison[2] test, which focuses on reliability and calls for a balancing of the two prongs. The judge denied defendant's motion, and the matter proceeded to trial.

The jury found defendant guilty of the lesser-included offense of third-degree eluding a police officer, N.J.S.A.

_____

[2] Manson v. Brathwaite, 432 U.S. 98, 114, 97, S. Ct. 2243, 2253, 53 L. Ed. 2d 140, 154 (1977); Madison, supra, 109 N.J. at 232-33.

5

2C:29-2b. The judge imposed a five-year probationary term, conditioned upon service of 364 days in the Bergen County jail.

Defendant appealed. A majority of the appellate panel affirmed the conviction. Judge Clarkson S. Fisher, Jr. dissented and, in a separate opinion, urged remanding to the trial court to conduct the Wade hearing anew.

## III.

Before this Court, defendant's sole contention is that he was denied due process of law by virtue of the admission of impermissibly suggestive and unreliable identification evidence, contrary to Wade. Defendant relies on the two-prong test articulated by the United States Supreme Court in Manson v. Brathwaite, 432 U.S. 98, 114, 97 S. Ct. 2243, 2253, 53 L. Ed. 2d 140, 154 (1977). In Manson, a Connecticut state trooper, acting in an undercover capacity, conducted a drug transaction with defendant Brathwaite. Id. at 100-01, 97 S. Ct. at 2246, 53 L. Ed. 2d at 145-46. The trooper described Brathwaite to backup officers just after the transaction. Id. at 101, 97 S. Ct. at 2246, 53 L. Ed. 2d at 145. Based on this description, one of the backup officers who knew Brathwaite suspected that he was the seller and left a photograph of Brathwaite in the trooper's office. Ibid. After viewing this single photograph alone in his office, the trooper "identified the person shown as the one

6

from whom he had purchased the narcotics." Id. at 101, 97 S. Ct. at 2246, 53 L. Ed. 2d at 146.

The Manson test was adopted essentially verbatim by this Court in State v. Madison, supra, 109 N.J. at 232-33. We discuss the test in detail in Section IV of this opinion. The Manson/Madison test was applied by this Court to showup identifications in State v. Herrera, supra, 187 N.J. at 503-04.

The State argues that the identifications were overwhelmingly reliable considering the totality of the circumstances. In making this argument, the State points to certain corroborating evidence to support the strength of the identifications, such as the mail found in the Suzuki addressed to defendant and the fact that defendant's mother told police he was using the car on the night in question.

Amicus curiae Attorney General argues that a judge should give special consideration to a police officer's training and experience in light of the factors enumerated pursuant to the two-part test for identification reliability. The Attorney General does not argue that there should be a law enforcement exception to the reliability analysis but rather postulates that a judge can properly find that trained police officers' observations should be entitled to greater credibility than observations made by lay persons.

IV.

Pursuant to the Manson/Madison test, the process of determining whether an out-of-court identification is admissible at trial consists of two steps.  At a hearing out of the presence of the jury, the judge first must determine whether or not the out-of-court identification procedure was impermissibly suggestive.  Herrera, supra, 187 N.J. at 503.  If the judge finds that the identification was not impermissibly suggestive, then the evidence may be admitted at trial.  If there is a finding of impermissible suggestiveness, the court must determine "whether the objectionable procedure resulted in a 'very substantial likelihood of irreparable misidentification.'"  Madison, supra, 109 N.J. at 232 (citations omitted).  To make that assessment, the judge must analyze the reliability of the identification by considering the totality of the circumstances and weighing the suggestive nature of the procedure against the reliability of the identification.  Id. at 233; Manson, supra, 432 U.S. at 114, 97 S. Ct. at 2253, 53 L. Ed. 2d at 154.  The evidence may be admitted at trial if the judge finds that the identification procedure was nevertheless reliable despite the impermissibly suggestive procedure used.  Herrera, supra, 187 N.J. at 503-04.

If the judge then determines that the procedure was reliable, taking into account the totality of the circumstances, the out-of-court identification is admissible at trial.  See

8

State v. Adams, 194 N.J. 186, 206 (2008).  The two prongs of the Manson/Madison test are interrelated, rather than mutually exclusive, and must be weighed against each another.  See Herrera, supra, 187 N.J. at 509.

"Reliability is the linchpin in determining the admissibility of identification testimony."  Manson, supra, 432 U.S. at 114, 97 S. Ct. at 2253, 53 L. Ed. 2d at 154.  To assess the reliability of an identification, this Court has adopted certain factors to be considered.  These factors are:

> [T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.
>
> [Herrera, supra, 187 N.J. at 503 (quoting Manson, supra, 432 U.S. at 114, 97 S. Ct. at 2253, 53 L. Ed. 2d at 154).]

The factors are to be weighed against "the corrupting effect of the suggestive identification."  Manson, supra, 432 U.S. at 114, 97 S. Ct. at 2253, 53 L. Ed. 2d at 154.

V.

Here, because defendant appeals as of right pursuant to Rule 2:2-1(a)(2), our review is limited to the issue raised in the dissent.  See R. 2:2-1(a)(2) ("Appeals may be taken to the Supreme Court from final judgments as of right . . . in cases where, and with regard to those issues as to which, there is

9

dissent in the Appellate Division." (emphasis added)); see also

State v. Yough, 208 N.J. 385, 395 (2011) ("The State appealed as

of right based on the dissent in the Appellate Division. R.

2:2-1(a)(2). The issues before us are limited to those raised

in the dissenting opinion."); State v. Breakiron, 108 N.J. 591,

595 (1987) (holding as a result of not seeking certification on

other issues, petitioner's appeal was limited to the question

raised in the dissent).

The opinions of the Appellate Division majority and Judge

Fisher agreed that the identification procedure employed was

impermissibly suggestive. However, the majority exercised

original jurisdiction, made factual findings, and weighed the

evidence relying on the transcripts in order to consider the

second Manson/Madison prong, which the trial judge had not

addressed. The dissenter concluded that such factfinding and

weighing of the evidence was inappropriate. He explained,

> Unlike my colleagues, who appear to have
> exercised original jurisdiction on the Wade
> issues,[] I am unwilling to express a view
> of the weight of the evidence since I was
> not present when the witnesses testified.
> Rather than hazard a view of the evidence
> from a cold record, I would remand for a re-
> examination of the second prong, including
> -- for the first time -- the trial court's
> weighing of the corrupting effect of the
> police procedure in light of our unanimous
> conclusion that the procedure was
> impermissibly suggestive.

The core issue before us is whether the Appellate Division majority was correct in exercising original jurisdiction. We conclude that it was not for several reasons. First, the majority made factual findings based on a hearing transcript and then weighed the evidence on its own. That approach is not in keeping with Rule 2:10-5, which permits appellate courts to exercise original jurisdiction "but only with great frugality," Tomaino v. Burman, 364 N.J. Super. 224, 234-35 (App. Div. 2003) (citation and internal quotation marks omitted), "to end perpetual or lengthy litigation," Allstate Ins. Co. v. Fisher, 408 N.J. Super. 289, 301 (App. Div. 2009) (citations omitted), but not to "weigh[] evidence anew" or "mak[e] independent factual findings," Cannuscio v. Claridge Hotel & Casino, 319 N.J. Super. 342, 347 (App. Div. 1999) (citation omitted).

Second, Rule 2:10-5 states that "[t]he appellate court may exercise such original jurisdiction as is necessary to the complete determination of any matter on review." In State v. Santos, 210 N.J. 129, 142 (2012), we noted that Rule 2:10-5 "allow[s] [an] appellate court to exercise original jurisdiction to eliminate unnecessary further litigation, but discourage[s] its use if factfinding is involved."

Third, in State v. Sugar, 108 N.J. 151 (1987), this Court exercised original jurisdiction to assess the issue of inevitable discovery under the proper legal standard. The Court

11

first noted that the ordinary course of action would be "to remand th[e] case to the trial court for it to redetermine the matter under the correct, clarified standard." Id. at 159. Nevertheless, the Court exercised original jurisdiction because "evidence presented d[id] not pose issues of credibility or require the subjective and intuitive evaluations of a trial court that would otherwise dictate a remand. . . . In th[o]se extraordinary circumstances, [the Court] believe[d] it appropriate to invoke [its] original jurisdiction." Id. at 159-60.

Fourth, the importance of the issues to be determined at a Wade hearing mandate setting aside the Appellate Division judgment here and remanding for a new hearing. The admissibility of identification evidence requires a careful balancing of the factors outlined in the Manson/Madison test. That process depends, in part, on a trial judge's assessment of the testimony presented at the hearing. Thus, in both Henderson, supra, 208 N.J. 208, and State v. Chen, 208 N.J. 307 (2011), even though the evidence as to all of the factors was in the record before this Court, we remanded to the trial court to determine admissibility. There are no compelling reasons here to proceed differently.

Thus, we conclude that the Appellate Division's exercise of original jurisdiction in order to engage in factfinding and

consideration of the second Manson/Madison prong was incorrect. Thus, we remand to the Law Division to conduct a new evidentiary hearing at which the Appellate Division's unanimous holding that the identification procedure was impermissibly suggestive shall be deemed the law of the case. We do not disturb that conclusion in light of the limited nature of the appeal of right before the Court.

## VI.

Accordingly, the judgment of the Appellate Division is reversed in part and the matter is remanded to the Law Division for a new Wade hearing concerning the second prong of the Manson/Madison test, i.e., the reliability of the suggestive identification proceeding, and the appropriate balancing of both prongs. Out of an abundance of caution and because the trial judge here has already made a decision on the admissibility of the out-of-court identifications, we direct that this matter be assigned to a different judge.


CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, HOENS, and PATTERSON; and JUDGES RODRÍGUEZ and CUFF (both temporarily assigned) join in this opinion.

13

SUPREME COURT OF NEW JERSEY

NO.     A-1          SEPTEMBER TERM 2012

ON APPEAL FROM     Appellate Division, Superior Court


STATE OF NEW JERSEY,

    Plaintiff-Respondent,

        v.

SANTINO J. MICELLI, a/k/a
SANTINO J. MICELI, a/k/a
SANTINO MICELI,

    Defendant-Appellant.


DECIDED     August 19, 2013
            Chief Justice Rabner          PRESIDING
OPINION BY     Per Curiam
CONCURRING/DISSENTING OPINION BY
DISSENTING OPINION BY

| CHECKLIST | REVERSE IN PART AND REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE HOENS | X | |
| JUSTICE PATTERSON | X | |
| JUDGE RODRÍGUEZ (t/a) | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 7 | |