NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-3867-05T4
 A-3602-13T4
 A-3603-13T4

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

RALPH BAKER,
a/k/a RALPH RAHMAN,

 Defendant-Appellant.

___________________________________

 Submitted November 29, 2016 – Decided June 28, 2017

 Before Judges Fisher and Leone.

 On appeal from Superior Court of New Jersey,
 Law Division, Union County, Indictment No. 02-
 10-1265 and Middlesex County, Indictment No.
 02-10-1239.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Alison Perrone, Designated
 Counsel, on the briefs).

 Grace H. Park, Acting Union County Prosecutor,
 attorney for respondent in A-3867-05 and A-
 3603-13 (Milton S. Leibowitz, Special Deputy
 Attorney General/Acting Assistant Prosecutor,
 of counsel and on the brief).
 Andrew C. Carey, Middlesex County Prosecutor,
 attorney for respondent in A-3602-13 (Nancy
 A. Hulett, Assistant Prosecutor, of counsel
 and on the brief).

 Appellant filed a pro se supplemental brief.

PER CURIAM

 Defendant Ralph Baker was convicted in separate trials in

Middlesex County and Union County. He appeals his November 10,

2005 judgment of conviction in Middlesex County, Appeal No. A-

3867-05. He also appeals the August 22, 2007, and September 17,

2007 orders denying a new trial in Union County, Appeal No. A-

3602-13, and in Middlesex County, Appeal No. A-3603-13,

respectively. The Middlesex County and Union County appeals were

listed back-to-back, and we consolidate them for purposes of this

opinion. We affirm in part, vacate in part, and remand.

 I.

 We outline the testimony in the Middlesex County trial. At

closing time on the evening of July 10, 2002, defendant entered a

Burger King in Edison Township. He was holding a black handgun,

carrying a black bag, and wearing latex gloves. He ordered the

fourteen-year-old cashier to give him "the f**king money." He

also grabbed a fifteen-year-old employee of a different Burger

King (the visitor), who was there visiting the manager, Michelle

Krigger, and pushed her against the counter. Krigger came forward

 2 A-3867-05T4
and said only she had access to the cash register. Defendant

pointed the gun at the cashier and then at the visitor and demanded

the money. Krigger gave defendant the money from the cash

register. Defendant then demanded and took money from the

visitor's purse before he fled in a black vehicle.

 We outline the testimony in the Union County trial. At about

1:40 a.m. on July 16, 2002, Union Township Police Officer Michael

Wittevrongel saw defendant running from the office of an Amoco gas

station. Defendant was headed toward a black vehicle in an

adjacent lot while wearing a black ski mask with holes cut out for

eyes and carrying a black bag. Wittevrongel radioed he believed

a robbery was in progress. He pulled over and saw defendant run

behind a small storage shed. Wittevrongel got out of his car, and

saw defendant emerge from behind the shed without the mask and

bag. Wittevrongel arrested defendant, and found $204 in his

pocket. After handcuffing defendant, Wittevrongel went behind the

shed and found the mask and the black bag. The bag contained a

black handgun, a loose bullet, thirteen packs of cigarettes, loose

cash, and fifty $1 bills in a wrapped bundle. In the black

vehicle, which was parked unlocked with the keys in the ignition

and was registered to defendant, Wittevrongel found defendant's

wallet, his driver's license, his papers, and latex gloves.

 3 A-3867-05T4
 A Union County grand jury indicted defendant for first-degree

robbery (first count), N.J.S.A. 2C:15-1; second-degree possession

of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4(a); third-

degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b); and

fourth-degree aggravated assault by pointing a firearm, N.J.S.A.

2C:12-1(b)(4), and separately indicted him for second-degree

certain persons not to possess a firearm, N.J.S.A. 2C:39-7(b).

 The Union County jury convicted defendant under the first

count of the lesser–included offense of disorderly-persons theft,

N.J.S.A. 2C:20-3(a), and also convicted him of the unlawful-

possession and certain-persons counts. In judgments of conviction

dated June 18, 2004, defendant was sentenced to seventeen years

in prison with eight years of parole ineligibility on the certain-

persons count, with concurrent sentences of six months in jail for

theft and seven years in prison for unlawful possession. Defendant

filed a notice of appeal.

 Defendant was then tried in Middlesex County. The ski mask,

bag, and gun seized in the Union County arrest were admitted into

evidence. The jury convicted defendant of first-degree robbery

of the Burger King cashier (Count One) and the visitor (Count

Two), N.J.S.A. 2C:15-1; second-degree possession of a firearm for

an unlawful purpose regarding the cashier (Count Three) and the

visitor (Count Four), N.J.S.A. 2C:39-4(a); fourth-degree unlawful

 4 A-3867-05T4
possession of a handgun (Count Five), N.J.S.A. 2C:39-5(b); and

fourth-degree aggravated assault by pointing a firearm at the

visitor and/or the cashier (Count Six), N.J.S.A. 2C:12-1(b)(4).

The trial court merged Count Three with Count One, and Count Four

with Count Two. The court sentenced defendant to life in prison

on Count Two, with concurrent sentences of twenty years in prison

with ten years of parole ineligibility on Count One, and eighteen

months in prison with nine months of parole ineligibility on Counts

Five and Six. Defendant filed a notice of appeal.

 Defendant was also charged in Somerset County with committing

a July 2, 2002 armed robbery and aggravated assault. It appears

the Somerset County court ruled the ski mask, bag, and gun seized

in the Union County arrest would be admissible, and granted

defendant's motion to have the mask tested for DNA. In 2006, the

State Police laboratory informed the Somerset County authorities

the mask bore DNA linked to another man arrested in April 2003 for

a masked armed robbery in Hudson County. Although the Somerset

County prosecutor disputed the DNA test excluded defendant, the

Somerset County indictment was dismissed voluntarily on April 3,

2008.

 When the DNA evidence came to light, defendant filed motions

in his Middlesex County and Union County appeals seeking remands.

We remanded the Middlesex County appeal to allow defendant to file

 5 A-3867-05T4
a motion for a new trial. We also allowed defendant to file a new

trial motion in Union County, but proceeded with the Union County

appeal. We affirmed the theft and unlawful possession convictions,

but reversed his certain-persons conviction and remanded for a new

trial on that charge, which the State later dismissed. State v.

Baker, No. A-3855-04 (App. Div. Feb. 21, 2007).

 Defendant's new trial motions in Middlesex and Union Counties

were denied on August 22, 2007, and September 17, 2007,

respectively. We dismissed defendant's untimely pro se appeals

and the Supreme Court denied his petitions for certification.

State v. Baker, 196 N.J. 592 (2008).

 In 2009, defendant challenged his Middlesex and Union

convictions by filing two federal "habeas" petitions under 28

U.S.C.A. § 2254 in the United States District Court for the

District of New Jersey. The petitions were consolidated before

Judge Kevin McNulty. Baker v. Ricci, No. 09-3654 (KM), 2013 U.S.

Dist. LEXIS 91718, at *2 (D.N.J. June 28, 2013). The judge

rejected the State's arguments that the petitions were untimely

or procedurally defaulted, but agreed with the State that defendant

had not exhausted his available state court remedies. Baker v.

Ricci, No. 09-3654 (KM), 2013 U.S. Dist. LEXIS 128713, at *2-3

(D.N.J. Sep. 9, 2013). The judge stayed the petitions but retained

jurisdiction while defendant exhausted his state court remedies.

 6 A-3867-05T4
Id. at *43. The judge commented that defendant's claim "based on

later-discovered DNA evidence" appeared to "have sufficient merit

to warrant further scrutiny." Id. at *2, *36-37.

 In May 2014, we granted defendant's motion to reinstate his

direct appeal in the Middlesex County case. We also allowed

defendant to file appeals as within time from the orders denying

new trials in Union County and in Middlesex County.

 II.

 We first consider defendant's appeal from his judgment of

conviction in Middlesex County, Appeal No. A-3867-05. His

counseled brief raises the following issues in that appeal:

 POINT ONE - KRIGGER'S IDENTIFICATION OF
 DEFENDANT SHOULD HAVE BEEN SUPPRESSED BECAUSE
 THE IDENTIFICATION PROCEDURE WAS
 IMPERMISSIBLY SUGGESTIVE AND RESULTED IN A
 VERY SUBSTANTIAL LIKELIHOOD OF IRREPARABLE
 MISIDENTIFICATION.
 . . . .
 POINT THREE - DEFENDANT'S DISCRETIONARY
 EXTENDED TERM OF LIFE IS MANIFESTLY EXCESSIVE
 AND REQUIRES A REMAND.1

Defendant's pro se brief raises the following issues:

 POINT I – THE IDENTIFICATION WAS NOT RELIABLE,
 DUE TO THE PHOTO ARRAY AND FAILURE TO ADHERE
 TO THE ATTORNEY GENERAL GUIDELINES ON
 IDENTIFICATION IN PHOTO ARRAYS, AND LIVE
 LINEUPS IN APRIL 2001, AGAINST UNITED [S]TATES

1
 Point Two in defendant's counseled brief concerns his Appeal No.
A-3603-13, challenging the denial of a new trial, which we address
in Point V.

 7 A-3867-05T4
 SUPREME COURT AND NEW JERSEY SUPREME COURT
 PRECEDENTS, CODIFIED INTO LAW.

 A.

 Defendant first challenges the December 4, 2003 denial of his

motion to suppress the out-of-court identification by Krigger.

"Our standard of review on a motion to bar an out-of-court-

identification . . . is no different from our review of a trial

court's findings in any non-jury case." State v. Wright, 444 N.J.

Super. 347, 356 (App. Div. 2016) (citing State v. Johnson, 42 N.J.

146, 161 (1964)). "Appellate review of a motion judge's factual

findings in a suppression hearing is highly deferential. We are

obliged to uphold the motion judge's factual findings so long as

sufficient credible evidence in the record supports those

findings." State v. Gonzales, 227 N.J. 77, 101 (2016) (citations

omitted). "Those factual findings are entitled to deference

because the motion judge, unlike an appellate court, has the

'opportunity to hear and see the witnesses and to have the "feel"

of the case, which a reviewing court cannot enjoy.'" Ibid.

(quoting Johnson, supra, 42 N.J. at 161). A "trial court's

findings at the hearing on the [reliability and] admissibility of

identification evidence are 'entitled to very considerable

weight.'" State v. Adams, 194 N.J. 186, 203 (2008) (quoting State

 8 A-3867-05T4
v. Farrow, 61 N.J. 434, 451 (1972)). We must hew to that standard

of review.

 Because Krigger's identification occurred in 2002, it is

governed by the "two-prong test articulated by the United States

Supreme Court in Manson v. Brathwaite, 432 U.S. 98, 114, 97 S. Ct.

2243, 2253, 53 L. Ed. 2d 140, 154 (1977)," which "was adopted

essentially verbatim by [our Supreme] Court in" State v. Madison,

109 N.J. 223, 232-33 (1988). State v. Micelli, 215 N.J. 284, 290

(2013).2

 Madison's two prongs examine suggestiveness and reliability:

 a court must first decide whether the
 procedure in question was in fact
 impermissibly suggestive. If the court does
 find the procedure impermissibly suggestive,
 it must then decide whether the objectionable
 procedure resulted in a "very substantial
 likelihood of irreparable misidentification."
 In carrying out the second part of the
 analysis, the court will focus on the
 reliability of the identification. If the
 court finds that the identification is
 reliable despite the impermissibly suggestive
 nature of the procedure, the identification
 may be admitted into evidence.

2
 In State v. Henderson, 208 N.J. 208, 288 (2011), our Supreme
Court revised Madison's two-prong test, articulating a more
detailed framework to be applied "to future cases only." Id. at
302. Although defendant's pro se brief relies on Henderson,
"[b]ecause the events underlying this case arose before the
Henderson decision was handed down, the guidelines established in
Manson/Madison are applicable to this matter." State v. Jones,
224 N.J. 70, 86 n.1 (2016).

 9 A-3867-05T4
 [Madison, supra, 109 N.J. at 232 (citations
 omitted).]

 "Reliability is the linchpin in determining the admissibility

of identification testimony[.]" Micelli, supra, 215 N.J. at 292

(quoting Manson, supra, 432 U.S. at 114, 97 S. Ct. at 2253, 53 L.

Ed. 2d at 154). "To assess the reliability of an identification,"

a court must consider "'[t]he opportunity of the witness to view

the criminal at the time of the crime, the witness' degree of

attention, the accuracy of his prior description of the criminal,

the level of certainty demonstrated at the confrontation, and the

time between the crime and the confrontation.'" Ibid. (citations

omitted).

 The judge at the suppression hearing found the following

facts. During the July 10, 2002 robbery, Krigger viewed defendant

for about five minutes from about four feet away, looking at him

straight in the eye. Defendant never pointed the gun at her.

 When police officers arrived, Krigger was able to describe

defendant in detail, noting he was about 5'9" tall, had a stocky

build, a receding hairline, short "salt and pepper" hair, a beard

with gray throughout, a scar on his right cheek, was wearing a

mechanics-type jumper and latex gloves, and carrying a black duffel

bag. Krigger was very confident she could identify the robber.

 10 A-3867-05T4
 The next day, July 11, Krigger helped prepare the computer-

generated composite. The visitor and the cashier respectively

confirmed the composite depicted or looked really similar to the

robber. Additionally, the judge found the composite had "a lot

of similarities" with defendant.

 After defendant was arrested, a Union County detective

provided Edison Sergeant Joseph Shannon with a photograph of

defendant, which he gave to another officer to prepare a six-photo

array. On July 19, nine days after the robbery, Shannon showed

Krigger all six photos one at a time for ten seconds each. Krigger

very quickly identified defendant's photograph and said he was the

robber. When Shannon asked how sure she was, on a scale of one

to ten, she replied "ten."

 The motion judge found that both Krigger and Sergeant Shannon

were credible, and that Krigger had "a very good opportunity" to

observe defendant. The judge found her identification was reliable

and admissible. Krigger identified defendant and his photo at the

motion hearing and at trial.

 Defendant argues that, in two respects, Sergeant Shannon

violated the then-new Attorney General's Guidelines.3 First, the

3
 The Guidelines became effective on October 15, 2001, about nine
months before defendant's identification here. See Letter from
Attorney General John J. Farmer, Jr., to All County Prosecutors

 11 A-3867-05T4
Guidelines "advise[] agencies to utilize, whenever practical,

someone other than the primary investigator assigned to a case to

conduct both photo and live lineup identifications." A.G. Letter,

supra, at 1-2; A.G. Guidelines, supra, at 1. Sergeant Shannon

acknowledged this Guideline and that he was one of the primary

investigators on the case, but said he presented the photo lineup

because he was the only officer available to do so at that time.

 Second, the Guidelines "recommend that, when possible,

'sequential lineups' should be utilized . . . . by displaying one

photo or one person at a time to the witness." A.G. Letter, supra,

at 2. "When presenting a sequential photo lineup, the lineup

administrator or investigator should . . . [p]resent each photo

to the witness separately, in a previously determined order,

removing those previously shown." A.G. Guidelines, supra, at 4.

While Sergeant Shannon displayed each photo to Krigger

sequentially, he was unaware of any need to remove from the table

the photos previously shown, and he instructed her not to make an

identification until she viewed all six photos before her.

et al. (Apr. 18, 2001) (A.G. Letter), and Office of the Attorney
Gen., N.J. Dep't of Law & Pub. Safety, Attorney General Guidelines
for Preparing and Conducting Photo and Live Lineup Identification
Procedures (A.G. Guidelines), reprinted in State v. Herrera, 187
N.J. 493, 511-20 (2006), and available at
http://www.state.nj.us/lps/dcj/agguide/photoid.pdf.

 12 A-3867-05T4
 However, the Guidelines permit both simultaneous photo

lineups and sequential photo lineups, albeit with a preference for

the latter. Id. at 3-4. Our Supreme Court has subsequently

observed that "recent studies that have called that preference

into doubt. Because the science supporting one procedure over the

other remains inconclusive, we are unable to find a preference for

either," and "we do not limit either one at this time." Henderson,

supra, 208 N.J. at 256-58.

 In any event, the Supreme Court in Henderson explicitly

rejected the argument that "any violation of the Attorney General

Guidelines should require per se exclusion of the resulting

eyewitness identification." Id. at 292-93. The Court also refused

to draw a "'presumption of impermissible suggestiveness'" even

from a material breach of the Guidelines. Id. at 227-28, 281

(citation omitted). The Court stressed "[t]he Attorney General

expressly noted that identifications that do not follow the

recommended Guidelines should not be deemed 'inadmissible or

otherwise in error.'" Id. at 278 (quoting A.G. Letter, supra, at

3).4 Rather, the Court found "the Guidelines are a series of

4
 Both the A.G. Letter, supra, at 3, and the A.G. Guidelines,
supra, at 1, affirmed "that current eyewitness identification
procedures fully comport with federal and state constitutional
requirements" even without the Guidelines' procedures.

 13 A-3867-05T4
recommended best practices," prophylactic measures to reduce

certain risks of suggestiveness. Ibid.

 Here, defendant failed to show those risks were realized.

There was no indication Sergeant Shannon gave "inadvertent verbal

cues or body language" or other "signaling to the witness of the

'correct' response." A.G. Guidelines, supra, at 1. To the

contrary, Shannon and Krigger testified, and the judge found, that

Shannon did nothing suggestive whatsoever. Further, as

recommended by the Guidelines, Shannon told Krigger not to assume

that anyone depicted in the photos was involved in the robbery.

Ibid.

 Similarly, although Krigger examined all photos on the table

before making her identification, there was no indication she

chose "which individual looks most like the perpetrator." See

A.G. Letter, supra, at 2. Rather, she testified she chose

defendant's photograph because he was the "person that robbed me."

 Defendant argues the photo array was suggestive because his

photo shows him wearing a white shirt. The judge found that all

the photos were color photos of African-American males of about

the same complexion, except for one male who was lighter, but that

Krigger was instructed the photographs do not always show the true

complexion of the person. Although the males were wearing

different-colored shirts, Sergeant Shannon and Krigger testified

 14 A-3867-05T4
she made the identification based on the face in the photos rather

than the clothing. The judge concluded the photos all showed

comparable-looking people. Defendant has given us no basis to

doubt the judge's conclusion.5

 Defendant notes that the police did not show the array to the

others in the Burger King, but that is not a basis for suppression.

Regardless, the officers could chose to seek an identification

from the calm adult in charge, rather than from the traumatized

young teenagers.

 Defendant also notes the photo lineup was conducted nine days

after the Burger King robbery, but that was not a lengthy period.

State v. Clausell, 121 N.J. 298, 327 (1990) (finding "[t]he time

lapse between the identification and the crime -- six weeks -- was

not extensive"); see Madison, supra, 109 N.J. at 242 ("A two month

time lapse without more . . . does not cause us to conclude that

the evidence of identification is inadmissible."). Moreover, she

helped prepare the composite only one day after the robbery, and

it "resembled defendant and prompted other individuals to conclude

that it was defendant who was depicted." State v. Cherry, 289

N.J. Super. 503, 520 (App. Div. 1995) (admitting identification

5
 Defendant has not supplied us with the photos used in the lineup.

 15 A-3867-05T4
two-and-one-half months after the crime where the witness helped

prepare a sketch shortly after the crime).

 The judge found beyond a reasonable doubt there was more than

sufficient indicia of reliability to outweigh any suggestivity in

the photo array. We defer to his findings, which were supported

by substantial credible evidence.

 B.

 The Middlesex County court sentenced defendant to an

extended–term sentence to life in prison for Count Two, the first-

degree robbery of the visitor. Defendant claims that sentence was

excessive. He does not dispute his prior convictions qualified

him for an extended term as a persistent offender under N.J.S.A.

2C:44-3(a).6 Nor does he claim the trial court abused its

discretion in deciding to impose an extended term. Rather,

defendant claims the court double-counted his prior record both

6
 A "persistent offender" must "ha[ve] been previously convicted
on at least two separate occasions of two crimes, committed at
different times," and "the date of the defendant's last release
from confinement" must have been "within 10 years of the date of
the crime for which the defendant is being sentenced." N.J.S.A.
2C:44-3(a). Defendant was convicted of multiple armed robberies
in Essex and Union Counties in 1982, sentenced to prison with
seventeen years of parole ineligibility, and initially paroled in
2000.

 16 A-3867-05T4
to qualify him for an extended term and to sentence him to the

maximum extended-term sentence.7

 We need not decide that claim because the State concedes

defendant is entitled to resentencing on Count Two. Defendant's

appeal was pending when our Supreme Court decided State v. Pierce,

188 N.J. 155 (2006). In Pierce, the Court held that "once the

court finds that th[e] statutory eligibility requirements are met"

for an extended term, "the range of sentences, available for

imposition, starts at the minimum of the ordinary-term range and

ends at the maximum of the extended-term range." Id. at 169; see

State v. Robinson, 217 N.J. 594, 608 (2014). Thus, Pierce set the

range for a first-degree extended term from "ten years to life

imprisonment." Pierce, supra, 188 N.J. at 179 (Albin, J.,

dissenting); see N.J.S.A. 2C:43-6(a)(1), -7(a)(2). However, the

prosecutor advised the trial court that "the range is 20 to life."

Our Supreme Court "summarily remanded" numerous cases "for

resentencing in the light of State v. Pierce." E.g., State v.

Mejias, 198 N.J. 308 (2008).

7
 The convictions used to qualify defendant for an extended term
may not be considered in determining the aggravating factors or
the length of his extended-range sentence, but the court may
consider "other aspects of the defendant's record," including
other crimes, his "juvenile record, parole or probation records,
and overall response to prior attempts at rehabilitation." State
v. Dunbar, 108 N.J. 80, 91-92 (1987); see State v. Vasquez, 374
N.J. Super. 252, 267-68 (App. Div. 2005).

 17 A-3867-05T4
 Accordingly, in Appeal No. A-3867-05, we vacate defendant's

life sentence on Count Two and remand "for re-sentencing, but only

in respect of reconsideration of the appropriate sentence for

defendant within the expanded range . . . . The court must

reconsider the applicable aggravating and mitigating factors and

impose a sentence within the broadened range of sentences available

consistent with [Pierce]." 188 N.J. at 171.8 We affirm his

convictions and remaining sentences in Middlesex County.

 III.

 We next consider defendant's appeal from the Union County

trial judge's denial of a new trial, Appeal No. A-3602-13. "[A]

motion for a new trial is addressed to the sound discretion of the

trial judge, and the exercise of that discretion will not be

interfered with on appeal unless a clear abuse has been shown."

State v. Russo, 333 N.J. Super. 119, 137 (App. Div. 2000) (citing

State v. Artis, 36 N.J. 538, 541 (1962)). Defendant claims:

 POINT ONE - THE COURT'S DECISION DENYING
 DEFENDANT'S MOTION FOR A NEW TRIAL BASED ON
 NEWLY DISCOVERED EVIDENCE MUST BE REVERSED.

8
 On remand, the trial court should reconsider aggravating factors
three, six, and nine without "double-counting" the offenses relied
on to qualify defendant for the extended term. Vasquez, supra,
374 N.J. Super. at 267. Defendant also challenges the court's
finding of aggravating factors one and two. As the court is
reconsidering the aggravating factors, we decline to address this
challenge, except we agree that considering defendant's physical
assault on the visitor was not "double-counting the elements of
the offense[s]." State v. Fuentes, 217 N.J. 57, 76 (2014).

 18 A-3867-05T4
 POINT TWO - DEFENDANT IS ENTITLED TO A NEW
 TRIAL BASED ON THE STATE'S DISCOVERY
 VIOLATION.

 We address defendant's claims in reverse order.

 A.

 After defendant's arrest near the Amoco gas station on July

16, the gas station attendant reported to the police the Amoco had

just been robbed. However, he returned to Turkey, the State was

unable to secure his return to New Jersey, and he did not testify

at trial.

 Defendant claims the State failed to disclose a police

teletype message relating to a July 2, 2002 robbery of the same

Amoco and same attendant. The message related the attendant's

statements that the perpetrator of the July 2 robbery as a black

male, approximately 5'9" tall, weighing 225 pounds, and carrying

a backpack, that he took thirteen packs of cigarettes and cash,

and that he entered a small white vehicle.

 After defendant was arrested near the Amoco on July 16, the

attendant gave a statement that the masked person who robbed him

on July 16 "resembled" the person who robbed him on July 2: "his

 19 A-3867-05T4
size is the same, gun looked the same, he took the same cigarettes

and type of cigarettes. The first time he wasn't wearing a mask." 9

 Defendant argues that the message was material because its

description of the robber differed from Officer Wittevrongel's

estimation that defendant was 6'0" tall and 230 pounds.10 The

trial judge denied a new trial, finding that there was "really

very little difference between the descriptions," that defendant's

use of the attendant's description of the perpetrator of the July

2 robbery could have lead the jury to believe defendant committed

that robbery as well, and that defendant had not shown how he

could admit the attendant's description with the attendant being

unavailable in Turkey.

 "[T]he suppression by the prosecution of evidence favorable

to an accused upon request violates due process where the evidence

is material either to guilt or to punishment, irrespective of the

good faith or bad faith of the prosecution." Brady v. Maryland,

373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97, 10 L. Ed. 2d 215, 218

(1963). "In order to establish a Brady violation, the defendant

must show that: (1) the prosecution suppressed evidence; (2) the

9
 Defendant has not provided us with the teletype or the
attendant's statement.
10
 There was nothing in the record indicating defendant's actual
height and weight.

 20 A-3867-05T4
evidence is favorable to the defense; and (3) the evidence is

material." State v. Martini, 160 N.J. 248, 268 (1999).

"[E]vidence is 'material' if there is a 'reasonable probability

that, had the evidence been disclosed to the defense, the result

of the proceeding would have been different.'" Id. at 269 (quoting

United States v. Bagley, 473 U.S. 667, 682, 105 S. Ct. 3375, 3383,

87 L. Ed. 2d 481, 494 (1985)).

 We agree that defendant failed to show such a reasonable

probability. The attendant's statements in the police teletype

message were hearsay which defendant fails to show would be

admissible. Moreover, the attendant himself was unavailable to

reiterate the statements or to be impeached by them. Thus, the

attendant's statements were "not 'evidence' at all," and their

disclosure "could have had no direct effect on the outcome of

trial, because [defendant] could have made no mention of them

either during argument or while questioning witnesses." Wood v.

Bartholomew, 516 U.S. 1, 6, 116 S. Ct. 7, 9, 133 L. Ed. 2d 1, 6-7

(1995).

 Defendant argues disclosure would have allowed him to make a

more informed decision whether to attempt to procure the

attendant's presence to testify at trial. Defendant offers no

reason to believe he could obtain the attendant's return from

Turkey and admission into the United States. As the trial court

 21 A-3867-05T4
noted, the State made "numerous efforts[] to try and get the

attendant here and they were unsuccessful." Defendant's argument

"is based on mere speculation." Ibid.11

 Therefore, we affirm the denial of defendant's claim that the

State committed a Brady violation regarding the teletype message.

 B.

 Defendant claims the DNA results are newly-discovered

evidence requiring a new trial. "[T]he test to be satisfied under

a newly discovered evidence approach is more stringent." State

v. Carter, 85 N.J. 300, 314 (1981).

 Evidence is newly discovered and sufficient
 to warrant the grant of a new trial when it
 is "(1) material to the issue and not merely
 cumulative or impeaching or contradictory; (2)
 discovered since the trial and not
 discoverable by reasonable diligence
 beforehand; and (3) of the sort that would
 probably change the jury's verdict if a new
 trial were granted."

 [State v. Nash, 212 N.J. 518, 549 (2013)
 (quoting Carter, supra, 85 N.J. at 314).]

11
 Thus, we need not resolve whether the slight difference in the
attendant's descriptions would have caused defendant to risk
procuring the presence at trial of the attendant, the victim in
the case. We note that, in the attendant's absence, defendant was
not convicted of first-degree robbery, of the attendant,
aggravated assault by pointing a firearm at the attendant, and
possession of a firearm with an unlawful purpose.

 22 A-3867-05T4
"[A]ll three prongs of that test must be satisfied before a

defendant will gain the relief of a new trial." State v. Ways,

180 N.J. 171, 187 (2004).

 At the hearing in Union County, defendant's counsel offered

the DNA report and proffered as follows. The State Police tested

the inside and outside of the ski mask for DNA. Defendant was

excluded as a potential source of the DNA inside the mask. The

DNA was run through the CODIS database, which provided the name

of a person whose DNA matched thirteen of fourteen potential

alleles, with a one in 8.6 quadrillion chance it would occur in

another African-American male. That person was under indictment

in a July 2, 2002 armed robbery in Hudson County in which a ski

mask was used.12 Defendant was not excluded as a contributor to

the DNA on the outside of the ski mask, with a match of six of six

alleles, which would appear in one in 544 African-American males.

 The trial court ruled that the DNA in its totality was

"inconclusive and subject to much speculation." The court

concluded it did not "meet[] standards one and three for the

grounds for a new trial based on newly discovered evidence."13

12
 Defendant now argues the person was convicted of the robbery.
13
 It was not disputed that the second requirement was met.

 23 A-3867-05T4
 We disagree. First, the DNA evidence as proffered was

material. "'[M]aterial evidence is any evidence that would have

some bearing on the claims being advanced,' and includes evidence

that supports a general denial of guilt," or third-party guilt.

Nash, supra, 212 N.J. at 549 (quoting Ways, supra, 180 N.J. at

188). Here, the DNA evidence clearly bore on defendant's denial

of guilt and supported a claim of third-party guilt. Not only did

it indicate that someone else had been wearing the mask, but it

suggested that the bag, handgun, cigarettes, and cash found with

the mask belonged to someone else. That supported defendant's

claim that he was not guilty of theft or unlawful possession of

the handgun.

 The State echoes the trial court's observation that a ski cap

could be worn inside out. Nonetheless, the vastly different

probabilities that the DNA came from defendant versus the Hudson

County suspect could make the DNA results material.

 Moreover, the DNA results as proffered were evidence "of the

sort that would probably change the jury's verdict if a new trial

were granted." Carter, supra, 85 N.J. at 314; see State v. Behn,

375 N.J. Super. 409, 429 (App. Div. 2005) (noting "DNA testing has

upset many convictions"). The DNA results strongly suggested the

mask was worn by another African-American male who was also

suspected of committing a masked armed robbery two weeks earlier.

 24 A-3867-05T4
That, coupled with the information that the Amoco station had been

robbed two weeks earlier by someone who used a similar handgun and

took the same type and number of cigarette packs, raised the

possibility that the bag with handgun, cash, and cigarettes came

from an earlier robbery by the person whose DNA was found on the

inside of the mask.

 Thus, the DNA evidence as proffered could "have the probable

effect of raising a reasonable doubt as to the defendant's guilt."

Nash, supra, 212 N.J. at 549 (quoting Ways, supra, 180 N.J. at

189); see Ways, supra, 180 N.J. at 195 (finding the third-party-

guilt evidence had a rational tendency to engender a reasonable

doubt). "DNA test results that not only tended to exculpate

defendant but to implicate someone else would be evidence of 'the

sort that would probably change the jury's verdict if a new trial

were granted.'" State v. Peterson, 364 N.J. Super. 387, 398-99

(App. Div. 2003) (quoting Carter, supra, 85 N.J. at 314)); see

State v. DeMarco, 387 N.J. Super. 506, 521 (App. Div. 2006)

(stressing that the DNA results could "place direct responsibility

for the very crime in question on a specific third party").

 The State argues its evidence was overwhelming, citing

Officer Wittevrongel's observation of defendant both before and

after he disappeared behind the shed. However, defendant was not

convicted of doing anything in Wittevrongel's sight. Rather, he

 25 A-3867-05T4
was convicted of possessing the handgun, and of theft of the

cigarettes and cash, found in the bag. The handgun, cigarettes,

cash, and bag were all found with the mask and linked to defendant

in part based on the mask. "We cannot conclude that the evidence

of guilt was 'overwhelming' in light of the newly discovered

evidence." Nash, supra, 212 N.J. at 552.

 Therefore, defendant's proffer regarding the DNA results

indicated he could satisfy the newly-discovered evidence standard.

However, a proffer by defense counsel is not the same as testimony

from a DNA expert. Indeed, defendant presented no testimony at

the hearing seeking a new trial. Moreover, defendant has not

supplied us with the DNA report. "Such a record does not lend

itself to suitable appellate resolution. A more precise

understanding of the pertinent facts is obtainable only through

live testimony and a trial level determination in the first

instance." Carter, supra, 85 N.J. at 314.

 Accordingly, in Appeal No. A-3602-13, we vacate the denial

of the new trial motion in Union County to the extent it raised

the newly-discovered DNA issue. We remand for an evidentiary

hearing at which defendant should introduce not only the DNA

results but also expert DNA testimony. The State may also

introduce evidence, including its own expert DNA testimony. We

 26 A-3867-05T4
affirm the denial of the new trial motion to the extent it raised

the Brady issue regarding the teletype message.

 IV.

 Finally, we consider defendant's appeal from the denial of a

new trial in Middlesex County, Appeal No. A-3603-13. Defendant

raises the following issue pertinent to that appeal:

 POINT TWO - THE COURT'S DECISION DENYING
 DEFENDANT'S MOTION FOR A NEW TRIAL BASED ON
 NEWLY DISCOVERED EVIDENCE MUST BE REVERSED.

 As in Union County, defendant's counsel made a similar proffer

at the Middlesex County motion hearing, and offered the DNA report.

The motion judge found "no question that prong 2 [of the newly-

discovered-evidence test] is met." Moreover, the court found the

DNA evidence was material. However, the court found the DNA

evidence would not alter the outcome of the Middlesex trial. The

court cited that the Burger King robbery did not involve a ski

mask, Krigger identified defendant's photo as the robber, Krigger

and the visitor identified defendant in court, and the cashier

clearly described the gun. The court added that only limited,

sanitized information about the Union County arrest was introduced

in the Middlesex County trial.

 Nonetheless, in the Middlesex County trial, the State called

Officer Wittevrongel. He testified he saw defendant, wearing a

"woolen head covering" and carrying a bag, headed toward a black

 27 A-3867-05T4
car containing his documents and latex gloves. Wittevrongel

testified he discovered where defendant dropped the bag, and found

the bag contained a handgun, and found the woolen head covering

just a couple of feet away. Wittevrongel identified defendant,

the woolen head covering, the handgun, the bag, and photographs

of the car and of the latex gloves.

 Sergeant Shannon testified he received the photos of the

handgun, bag, and latex gloves from Union County. A forensic

ballistics expert testified the handgun was operable. The

prosecutor showed the bag, the handgun, and the photo of the latex

gloves to Krigger, the visitor, and the cashier, who commented on

how much the bag, gun, and latex gloves resembled those used in

the Burger King robbery.

 Moreover, the prosecutor detailed this testimony and used the

items from the July 16, 2002 Union County arrest both in her

opening statement and closing argument. The prosecutor argued

that defendant robbed the Burger King "with the same bag, the same

gun. And, in the same type car, are found the gloves. The only

thing that's different, or additional on July 16th of 2002, he's

wearing a woolen head covering."

 Given the use in the Middlesex trial of the mask, handgun,

and bag from the Union County arrest, we agree with the motion

judge that the DNA results as proffered are material. They bear

 28 A-3867-05T4
on the prosecution's assertion that those items were connected to

defendant.

 It is a far closer question whether the DNA evidence as

proffered could have the probable effect of raising a reasonable

doubt of defendant's guilt of the Middlesex County offenses. As

the motion judge emphasized, defendant was linked to the Burger

King robbery by eyewitness identifications both before and at

trial. Moreover, defendant did not wear a mask in that robbery.

However, the State offered the evidence about the mask to show

defendant's ownership of the nearby bag and the gun it contained.

Further, the prosecutor gave the information and items from the

Union County arrest a major role in its proofs and arguments.

 A "reviewing court must engage in a thorough, fact-sensitive

analysis to determine whether the newly discovered evidence would

probably make a difference to the jury." Ways, supra, 180 N.J.

at 191. As noted above, defendant has merely proffered the DNA

evidence and has not provided us with the DNA report. Moreover,

defendant's counsel told the motion judge he was "essentially

asking the court to hold off and hear from the DNA expert first."

In these circumstances, it is most appropriate to vacate the order

denying a new trial and remand to allow the court to have a full

factual record to determine whether the actual DNA evidence could

have the probable effect of raising a reasonable doubt of

 29 A-3867-05T4
defendant's guilt of the Middlesex County offenses. Again,

defendant should present the DNA report and DNA expert testimony,

and the State should have the opportunity to present contravening

evidence including expert testimony. To reduce duplication, the

parties and the courts may coordinate the conduct or the timing

of the Union County and Middlesex County proceedings on remand.

 We recognize the age of these convictions. Nonetheless,

"[h]owever difficult the process of review, the passage of time

must not be a bar to assessing the validity of a verdict that is

cast in doubt by evidence suggesting that a defendant may be

innocent." Id. at 188. Moreover, "our traditions of comprehensive

justice will best be served by decisions that reflect thoughtful

and thorough consideration and disposition of substantive

contentions" prior to federal habeas review. State v. Preciose,

129 N.J. 451, 477-78 (1992).

 Defendant's remaining arguments in his pro se brief lack

sufficient merit to warrant discussion. R. 2:11-3(e)(2).

 In Appeal No. A-3867-05, we affirm in part, vacate in part,

and remand. In Appeal No. A-3602-13, we affirm in part, vacate

in part, and remand. In Appeal No. A-3603-13, we vacate and

remand. We do not retain jurisdiction.

 30 A-3867-05T4