**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0891-23

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

v.

MARCUS HARRIS and
YASIN BRANCH,

     Defendants-Respondents.

_____

Argued April 8, 2024 – Decided May 9, 2024

Before Judges Gilson and DeAlmeida.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 19-06-1553.

Lucille M. Rosano, Assistant Prosecutor, argued the cause for appellant (Theodore N. Stephens, II, Essex County Prosecutor, attorney; Lucille M. Rosano, of counsel and on the briefs).

Morgan A. Birck, Assistant Deputy Public Defender, argued the cause for respondent Marcus Harris (Jennifer Nicole Sellitti, Public Defender, attorney; Morgan A. Birck, of counsel and on the brief).

Andrew Robert Burroughs, Designated Counsel, argued the cause for respondent Yasin Branch (Jennifer Nicole Sellitti, Public Defender, attorney; Andrew Robert Burroughs, on the brief).

PER CURIAM

We granted the State leave to appeal from an October 12, 2023 order (the Original Order), which granted, in part, defendants' motion to suppress the out-of-court identification of defendant Marcus Harris made by O.E. (Orlando).[1] Thereafter, in January 2024, the trial court sent to counsel for the parties an amended order (the Amended Order) that allowed the State to present Orlando's testimony at a "Wade/Henderson hearing,"[2] provided that hearing was conducted and completed "before the trial jury is impaneled."

The State argues that we should reverse and vacate the Original Order because the trial court abused its discretion in suppressing Orlando's out-of-court identification. The State concedes that the Amended Order grants most of the relief it is seeking but argues that we should direct the trial court to modify

---

[1]  We use initials and fictitious names for the witnesses and victim to protect their privacy interests.  See R. 1:38-3(c)(12).

[2]  United States v. Wade, 388 U.S. 218 (1967); State v. Henderson, 208 N.J. 208 (2011) (explaining that a Wade/Henderson hearing is a pretrial hearing that assesses the reliability of a witness identification procedure through witness testimony to determine the admissibility of an out-of-court identification of a defendant).

the Amended Order to allow the <u>Wade</u>/<u>Henderson</u> hearing concerning Orlando's out-of-court identification to be conducted during trial.

Defendants Marcus Harris and Yasin Branch argue that the Original Order was correctly decided. In that regard, they contend that they have a right to know if Orlando's out-of-court identification will be admitted before their trial starts. Accordingly, defendants object to the Amended Order and argue that the trial court had no jurisdiction to issue the Amended Order. They assert that once this court granted leave to appeal, the trial court no longer had jurisdiction over the Original Order and, therefore, could not amend that order.

The record before us does not clearly establish when the Amended Order was filed in the trial court. The Amended Order is dated October 12, 2023, has a filed stamp date of October 31, 2023, but was sent to counsel for the first time on January 25, 2024. What is clear is that the trial court has decided to amend the Original Order, and we discern no error in that decision. Accordingly, we direct that the Original Order be vacated. We also direct that on remand the Amended Order be re-filed and re-served so that there is no issue concerning the trial court's jurisdiction to issue the Amended Order. To avoid confusion, we further direct that the trial court is to label the Amended Order as the "Amended

A-0891-23

Order Concerning the Continued <u>Wade</u>/<u>Henderson</u> Hearing" and is to date the order on the day it is actually filed.

We deny the State's request that we direct the trial court to conduct that portion of the <u>Wade</u>/<u>Henderson</u> hearing during trial.  The trial court acted within its discretion in ruling that the hearing should be completed before the jury is impaneled.  We leave the scheduling of the continued hearing to the sound discretion of the trial court.  In scheduling the continued <u>Wade</u>/<u>Henderson</u> hearing, the trial court can appropriately balance the State's concerns that it has limited control over Orlando and that it does not want to bring him to court multiple times against defendants' legitimate concerns about knowing before the start of the trial whether Orlando's out-of-court identification will be allowed at trial.

I.

On March 16, 2019, D.R. (Dan) was shot and killed while on a street in Newark.  Four witnesses observed the shooting:  Orlando, S.D. (Sally), J.G. (Joe), and S.C. (Steve).  The shooting and some of the events surrounding the shooting were captured by a surveillance camera at a nearby deli.

Subsequent investigations revealed that defendant Harris was involved in filming a music video outside the deli on the day of the shooting.  Defendant

A-0891-23

Branch was also present. The State alleges that Dan interrupted the filming by stepping into the area being filmed. Harris pushed Dan out of the filming area, Dan stepped back into the filming area, and Dan and Harris then got into a fistfight. Orlando later reported that he heard Harris tell Branch, "give me the gun." Branch then lifted his coat, Harris reached for Branch's waistband, and Harris then brandished a gun. Thereafter, Harris fired the gun multiple times at Dan. Dan was hit by several bullets and was later pronounced dead at a hospital.

Within the three weeks following the shooting, Orlando, Sally, Joe, and Steve gave statements to law enforcement personnel and made out-of-court identifications of Harris and Branch.

On March 18, 2019, Orlando gave a statement to two detectives. Orlando informed the detectives that he knew the shooter as "Mark,"[3] but he did not know Mark's last name. Orlando explained that he and Mark grew up in the same area, were around the same age, and had known each other for approximately twenty years. Orlando also explained that he had seen Mark at a bar the night before the shooting. While at that bar, Orlando learned that a music video would be filmed the next day, and he decided to go watch the filming.

---

[3] In the record, "Mark" is sometimes spelled as "Marc." We use "Mark" because that is how Orlando spelled the name on the back of the photo he was shown when he made his out-of-court identification.

While Orlando was describing the events surrounding the shooting, he repeatedly told the detectives that they should view the video to confirm the details of the shooting. Orlando did not identify the specific video he was referring to, but at the Wade/Henderson hearing, one of the detectives, who had since become a sergeant, testified that he thought Orlando was referring to the surveillance video.

During Orlando's recorded statement, a detective showed Orlando a photograph and told Orlando: "I want to show you a photo. . . . I want you to tell me if you recognize the person in this photo. If you do, you do, and if you don't, tell me you don't." The detective then showed Orlando a single photograph of Harris. Orlando identified the person in the photo as Mark and as the shooter. Orlando then wrote on the back of the photograph: "This is who I know as Mark." Orlando added the date and time and his signature to the back of the photo.

In June 2019, Harris was indicted for four crimes: first-degree murder, N.J.S.A. 2C:11-3(a)(1) and (2); second-degree conspiracy to commit aggravated assault, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:12-1; second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b); and second-degree possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4(a). Branch was indicted

6

for second-degree conspiracy to commit aggravated assault and second-degree unlawful possession of a handgun.

In June 2021, Harris moved to suppress the out-of-court identifications made by Orlando, Sally, Joe, and Steve. Branch joined that motion. Following initial oral argument, the trial court granted defendants a Wade/Henderson hearing to address the reliability of the out-of-court identifications. At the first two days of the Wade/Henderson hearing, Sergeant Wesley Mondelus testified on behalf of the State. He described the procedures used with each of the witnesses when they provided their out-of-court identifications. Following Mondelus' testimony, defendants argued that the court should hear from each of the witnesses. The trial court granted that request and directed that all four witnesses were to provide testimony concerning their out-of-court identifications during the Wade/Henderson hearing.

Thereafter, Joe and Steve both testified concerning the statements and identifications they had made. On January 8, 2024, the trial court issued an order and written opinion denying defendants' motion to suppress the out-of-court identifications made by Joe and Steve.

In the interim, the State informed the trial court that it was no longer seeking to use Sally's out-of-court identification because it was having difficulty

A-0891-23

securing her appearance. Regarding Orlando, the State asked the trial court for a further extension to arrange his appearance to testify at the Wade/Henderson hearing. The State explained that Orlando had moved out of state, and it was having difficulty obtaining his cooperation to appear. So, in October 2023, the State asked the trial court to allow it to bring Orlando to court one time so he could testify at the Wade/Henderson hearing and then testify shortly thereafter at trial. In other words, the State requested the trial court to allow it to bring Orlando to court once rather than twice.

On October 12, 2023, the trial court entered the Original Order denying the State's application for a continuance to present the testimony of Orlando. The Original Order stated, in relevant part:

> 2. This court finds the State has had ample time to produce [Orlando] for testimony in this matter. Any further delays in this matter inures to the Defendants' detriment.
>
> 3. Further[,] Mr. Harris' right to a fair trial is hampered by requiring defense counsel to select a jury and present an opening argument without knowing the admissibility of an inculpatory eyewitness identification.
>
> 4. [Orlando's] out-of-court identification testimony is barred at the time of trial. Defendants' motion to suppress as to this witness is granted.

A-0891-23

Shortly after the entry of the Original Order, the State sought leave to appeal. On November 22, 2023, we issued an order granting the State's motion for leave to appeal from the Original Order.

While this appeal was pending, on January 25, 2024, the law clerk for the trial court sent an email to counsel for the State and defendants and attached the Amended Order. As already noted, the Amended Order was dated October 12, 2023, but was stamped as having been filed on October 31, 2023. Moreover, the Amended Order was clearly prepared after October 12, 2023, because in the order it states: "13. The State filed a Notice of Appeal on October 31, 2023."

Substantively, the Amended Order changed the trial court's ruling concerning Orlando's testimony at the Wade/Henderson hearing. Where the Original Order barred Orlando's out-of-court identification, the Amended Order states: "Wade/Henderson hearing with the testimony of [Orlando], to be completed before the trial jury is impaneled."

II.

The issues on appeal are significantly different when considering the Original Order as compared to the Amended Order. The obvious, and substantive, difference between the two orders is that the Original Order definitively barred Orlando from testifying about his out-of-court identification

A-0891-23

of Harris. In contrast, the Amended Order provides that there will be a further hearing at which Orlando can testify, provided he is produced and provided that the Wade/Henderson hearing is completed before the jury is impaneled for defendants' criminal trial.

"[T]he decision to admit or exclude evidence is one firmly entrusted to the trial court's discretion." State v. Prall, 231 N.J. 567, 580 (2018) (quoting Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010)). Appellate courts generally "defer to a trial court's evidentiary ruling absent an abuse of discretion." State v. Burney, 255 N.J. 1, 20 (2023) (quoting State v. Garcia, 245 N.J. 412, 430 (2021)). An abuse of discretion occurs "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigr. & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)). An evidentiary ruling will be reviewed de novo, however, if the trial court applies the wrong legal standard in deciding to admit or exclude evidence. State v. Trinidad, 241 N.J. 425, 448 (2020).

The New Jersey Supreme Court has set up certain procedures to determine if a witness's out-of-court identification of a defendant is reliable and admissible. In that regard, the Court has identified various "system" and

"estimator" variables that can affect a witness's identification. State v. Henderson, 208 N.J. 208, 218 (2011). System variables, such as pre-identification instructions and lineup procedures, are "within the control of the criminal justice system," whereas estimator variables, such as how much time the witness had to observe the event or the presence of a weapon during the event, are not within the control of the legal system. Id. at 218, 289-90.

The Court has set forth a four-part test that governs whether and how to conduct a hearing to address the admissibility of an out-of-court identification of a defendant. Id. at 288-89. "First, to obtain a pretrial hearing, a defendant has the initial burden of showing some evidence of suggestiveness that could lead to a mistaken identification." Id. at 288. "That evidence, in general, must be tied to a system—and not an estimator—variable." Id. at 288-89.

If a trial court determines that the defendant has met the threshold for a hearing, the trial court must "determine if the identification procedure was impermissibly suggestive and, if so, whether the identification is reliable." State v. Micelli, 215 N.J. 284, 288 (2013). That hearing is generally referred to as a Wade hearing or Wade/Henderson hearing. Ibid.

Second, at the hearing, "the State must then offer proof to show that the proffered eyewitness identification is reliable[,] accounting for system and

11                                                                                    A-0891-23

estimator variables." Henderson, 208 N.J. at 289 (explaining that "the court can end the hearing at any time if it finds from the testimony that defendant's threshold allegation of suggestiveness is groundless").

Third, defendant bears the ultimate burden "to prove a very substantial likelihood of irreparable misidentification." Ibid. Fourth, "if after weighing the evidence presented a court finds from the totality of the circumstances that [the] defendant has demonstrated a very substantial likelihood of irreparable misidentification, the court should suppress the identification evidence." Ibid.

In this matter, the trial court found that defendants met their initial burden by showing some evidence of suggestiveness that could lead to a misidentification. Regarding Orlando, the record demonstrates that he may have viewed the surveillance video before giving a statement to the police and before making his identification of Harris from a photograph shown to him by a detective. Indeed, before us, the State does not argue that the trial court erred in ordering a Wade/Henderson hearing.

Instead, the issue is whether the trial court abused its discretion in directing the State to produce Orlando at a hearing conducted before trial. "A court may exercise broad discretion in controlling its calendar." State v. Kates, 426 N.J. Super. 32, 45 (App. Div. 2012). In exercising that discretion, "[a] trial

A-0891-23

court must strike a balance between its inherent and necessary right to control its own calendar and the public's interest in the orderly administration of justice." Ibid. (quoting State v. Furguson, 198 N.J. Super. 395, 402 (App. Div. 1985)). An appellate court will reverse a trial court for failing to grant an adjournment only if the trial court abused its discretion, causing a party a "manifest wrong or injury." State v. Hayes, 205 N.J. 522, 537-38 (2011) (quoting State v. McLaughlin, 310 N.J. Super. 242, 259 (App. Div. 1998)). Similarly, an appellate court will reverse a trial court's decision on the admissibility of witness testimony concerning an out-of-court identification of a defendant only if the ruling "was so wide of the mark that a manifest denial of justice resulted." State v. Sanchez, 247 N.J. 450, 465-66 (2021) (quoting State v. Singh, 245 N.J. 1, 13 (2021)).

The record before us establishes that the trial court intended to amend the Original Order and enter the Amended Order. The Amended Order does not bar Orlando's out-of-court identification. Instead, it requires a continuation of the Wade/Henderson hearing at which Orlando can testify. The Amended Order also states that the continuation hearing must occur before the jury is impaneled. We discern no abuse of discretion in that decision. The State has had ample time to arrange for or compel Orlando to appear at the continued

13

<u>Wade</u>/<u>Henderson</u> hearing. Defendants correctly argue that they have a right to know if Orlando will be allowed to testify about his out-of-court identification before trial. In short, the trial court had a rational basis for its decision, the decision did not depart from established policies, and the decision did not rest on an impermissible basis.

To clarify any confusion, we vacate the Original Order. We remand this matter with direction that the trial court re-file and re-serve the Amended Order. The body of the Amended Order can stay the same. To avoid confusion, however, the trial court is directed to label the Amended Order as the "Amended Order Concerning the Continued <u>Wade</u>/<u>Henderson</u> Hearing." The Amended Order is then to be dated on the day it is actually filed following our remand.

Vacated in part and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0891-23