**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1581-21

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DARREN WATKINS, JR., a/k/a
RGBKING,

    Defendant-Appellant.

_____

Submitted December 19, 2023 – Decided February 15, 2024

Before Judges Enright and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment Nos. 17-03-0194 and 17-03-0261.

Joseph E. Krakora, Public Defender, attorney for appellant (Rochelle Mareka Amelia Watson, Deputy Public Defender, of counsel and on the brief).

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Leandra L. Cilindrello, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant, Darren Watkins, Jr. appeals from a November 18, 2021 order denying his petition for post-conviction relief (PCR) after an evidentiary hearing. We affirm, substantially for the reasons set forth by Judge Scott J. Bennion in his well-reasoned oral opinion.

I.

On March 6, 2017, Watkins was charged in Passaic County Indictment Number 17-03-194 with: first-degree robbery, N.J.S.A. 2C:15-1a(2); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4a(1); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5b(1); and third-degree luring, N.J.S.A. 2C:13-7a.

On March 23, 2017, Watkins was charged in Passaic County Indictment Number 17-03-261 with: first-degree robbery; second-degree aggravated assault, N.J.S.A. 2C:12-1b(1); fourth-degree aggravated assault, N.J.S.A. 2C:12-1b(4); second-degree unlawful possession of a weapon; and fourth-degree possession of prohibited weapons/devises, N.J.S.A. 2C:39-3f(1).

The State had seized physical evidence from Watkins' apartment. The search revealed: "a red-hooded sweatshirt, a black ski mask, an Apple iPhone box, a white Samsung cell phone . . . , a silver and black Taurus [nine] millimeter handgun, a pair of blue jeans . . . , and one pair of black Nike sneakers." In

October 2017, Watkins' trial counsel filed a notice of motion to suppress the gun.

In November 2017 the motion to suppress was withdrawn. Watkins pleaded guilty to one count of first-degree robbery under each pending indictment. Watkins provided a factual basis for his guilty pleas. Under Indictment No. 17-03-261, Watkins admitted: (1) on September 24, 2016, using the name RGB King, he made contact on Facebook with a man; (2) he agreed to meet the man to sell him two cell phones; (3) he was in possession of a nine-millimeter Taurus handgun; (4) he used the handgun to threaten the man so that the man would give him money without giving him the two cell phones; and (5) he and the man got into a scuffle and he shot the man in the leg. Watkins testified he understood his actions constituted robbery in the first-degree and he pleaded guilty because he was, in fact, guilty.

Under Indictment No. 17-03-194 Watkins admitted: (1) on September 17, 2016, he came in contact with a woman on Facebook, he was using the name RGB King; (2) he told the woman he would sell her a cell phone for money; (3) he met the woman under the pretense that he was going to sell her a cell phone; (4) when he met the woman he produced a silver handgun; (5) he used the handgun to threaten and put fear in the woman and take her money without

 A-1581-21

giving her the cell phone; and (6) he took her money without any intention of giving her the cell phone. Watkins testified he understood his actions constituted robbery in the first-degree and he pleaded guilty because he was, in fact, guilty.

Watkins stated he and his counsel had the opportunity to review the State's evidence and discuss it. Watkins testified that he: completed the plea form with the assistance of counsel; read and understood the form; signed and initialed the form of his own free will; and that his answers were truthful. He testified that he understood he was waiving several rights, including "any pretrial motions in these cases."

Moreover, Watkins testified that: he was satisfied with his attorney's advice; the attorney went over the State's evidence with him; he had enough time to talk to his attorney; and his attorney answered all his questions. Further, he stated that his answers were truthful, he was pleading guilty of his own free will and because he was, in fact, guilty. Watkins stated he had no questions of the judge, his attorney, or the prosecutor.

After the plea, but before sentencing, Watkins advised the court that he "wanted to withdraw his guilty plea and hire private counsel." Nonetheless, on February 26, 2018, Watkins advised he "wanted to proceed with his guilty

4

pleas." Watkins stated he had no questions of his counsel before proceeding and declined the right to be heard any further.

The judge found no "reason to deviate from th[e] plea agreement." He sentenced Watkins on Indictment No. 17-03-0261 to "nine years New Jersey State Prison with eighty-five percent to be served before parole eligibility, five years of parole supervision to follow[,]" and on Indictment No. 17-03-0191 "a concurrent term of nine years New Jersey State Prison with eighty-five percent to be served, followed by a five year period of parole supervision . . . ." Watkins testified that he understood his maximum sentencing exposure, for each of the offenses, was twenty years.

Watkins appealed from the sentence. We affirmed, "satisfied that the sentence [wa]s not manifestly excessive or unduly punitive and d[id] not constitute an abuse of discretion." State v. Darren Watkins, Jr., No. A-004723-17 (App. Div. February 13, 2019).

In February 2020, Watkins filed a petition for PCR. He contended he was provided with ineffective assistance of counsel related to: (1) the sentences he received; (2) counsel's unfulfilled promises; (3) counsel's failure to process any

motion related to suppressing evidence or seek a <u>Wade</u> hearing[1]; and (4) counsel's failure to provide him full discovery.

Judge Bennion held an evidentiary hearing. Watkins' plea counsel testified and confirmed she represented Watkins on both indictments. She recalled conducting an in-depth review of all discovery and ordering an investigation of the circumstances surrounding the search, to determine if the items recovered from the search could be suppressed. She specifically remembered Watkins because he was around eighteen-years old. She stated that she visited him many times "because there was a lot of evidence on both cases" and she reviewed the evidence with Watkins because he was an "involved client."

Plea counsel also analyzed the "pros and cons" of both cases. She explained her "trial strategy" had to include "taking both cases into consideration," because "the State [wa]s going to . . . try the stronger case first." Counsel concluded the stronger case involved the shooting because the victim

---

[1] <u>United States v. Wade</u>, 388 U.S. 218 (1967). "A <u>Wade</u> hearing is required to determine if the identification procedure was impermissibly suggestive and, if so, whether the identification is reliable. The trial court conducts a <u>Wade</u> hearing to determine the admissibility of the out-of-court identifications." <u>State v. Micelli</u>, 215 N.J. 284, 288 (2013) (citing <u>State v. Ortiz</u>, 203 N.J. Super. 518, 522 (App. Div. 1985)).

A-1581-21

was a hundred percent sure that it was Watkins. In assessing the strength of the motion to suppress, counsel recalled that "it did[ not] have a super strong possibility of success but it did have some." Nonetheless, "even without the gun, [the State] had a pretty strong case."

Additionally, plea counsel testified she remembered discussing the suppression motion with Watkins and "going over it with him and what the pros and what the strengths were." She recalled Watkins being the "kind of client that [she] had to explain everything to and [she] was very, very thorough." She "would have discussed with him the reasons why it was in his interest to withdraw the motion to suppress and enter the plea."

Following the evidentiary hearing, Judge Bennion issued an oral decision, finding plea counsel's:

> answers were prompt, even though this was several years after her representation, and she did not have the benefit of her file[,] which could not be located. . . . [S]he came across as being intelligent, experienced, she had an even tone, a good demeanor, showed no emotion, she was professional. Showed no special interest in the case, she did not embellish her answers . . . . She was willing to answer. She provided good explanations to the questions. There were no contradictions in her testimony. Her testimony was largely supported by the record and the court feels that she was inherently believable.

7

A-1581-21

The court f[oun]d [counsel's] testimony to be credible. . . . . [Counsel] was likely one of the most credible witnesses [he] ha[d] ever heard testify in a case.

In addressing the merits, the judge first considered Watkins' assertion that he received ineffective assistance of counsel because "defense counsel failed to investigate whether a motion to suppress [the] search of [Watkins'] home was viable under the circumstances." However, the judge noted there was an investigation and counsel filed a motion to suppress. The judge credited counsel's testimony that while "there was a possibility of success[,] . . . it was[ no]t a slam dunk." The judge found counsel made strategic and tactical decisions, after a full and proper investigation, and after full consultation with Watkins.

In addition, the judge found Watkins did "not demonstrate[] that there [wa]s a reasonable probability that but for counsel's alleged errors [he] would not have pleaded guilty and would have insisted on going to trial." The judge determined: (1) counsel negotiated a favorable plea deal and (2) Watkins could have been convicted of several other charges which could have resulted in additional consecutive sentences. Moreover, the judge credited counsel's assessment "that even without the gun[,] the [State] had a pretty strong case." Further, he observed "these were not some random robberies," instead, Watkins

A-1581-21

contacted the victims on Facebook and identified himself as RGB King; the victim shot by Watkins identified him with a hundred percent certainty; and Watkins was also identified by a juvenile detective from the RGB King photos from Facebook. Accordingly, the judge denied the PCR petition by order dated November 18, 2021.

II.

On appeal, Watkins raises the following argument:

> THE PCR COURT ERRED IN DENYING THE PETITION BECAUSE DEFENSE COUNSEL HAD NO SPECIFIC RECOLLECTION OF THE ADVICE SHE PROVIDED DEFENDANT BEFORE WITHDRAWING A MERITORIOUS SUPPRESSION MOTION AS A CONDITION OF HIS GUILTY PLEAS.

"P[CR] relief is New Jersey's analogue to the federal writ of habeas corpus." State v. Pierre, 223 N.J. 560, 576 (2015) (quoting State v. Preciose, 129 N.J. 451, 459 (1992)). PCR provides a "built-in 'safeguard that ensures that a defendant [is] not unjustly convicted.'" State v. Nash, 212 N.J. 518, 540 (2013) (quoting State v. McQuaid, 147 N.J. 464, 482 (1997)).

"A petitioner must establish the right to [PCR] by a preponderance of the credible evidence." Preciose, 129 N.J. at 459. "Our standard of review is necessarily deferential to a PCR court's factual findings based on its review of

live witness testimony." Nash, 212 N.J. at 540. "In such circumstances we will uphold the PCR court's findings that are supported by sufficient credible evidence in the record." Ibid. "An appellate court's reading of a cold record is a pale substitute for a trial court's assessment of the credibility of a witness he [or she] has observed firsthand." Ibid. "[However], we need not defer to a PCR court's interpretation of the law; a legal conclusion is reviewed de novo." Id. at 540-41.

Watkins argues he is entitled to PCR because he was provided with ineffective assistance of plea counsel. "Those accused in criminal proceedings are guaranteed the right to counsel to assist in their defense." State v. Gideon, 244 N.J. 538, 549 (2021) (citing U.S. Const. amend. VI; N.J. Const. art. I, ¶ 10).

> To satisfy the right to counsel guaranteed by our Federal and State Constitutions, it is not enough "[t]hat a person who happens to be a lawyer is present at trial alongside the accused," rather, the right to counsel has been interpreted by the United States Supreme Court and [the New Jersey Supreme] Court as "the right to the effective assistance of counsel."
>
> [Id. at 550 (quoting Strickland v. Washington, 466 U.S. 668, 685-86 (1984)).]

To establish a prima facie claim for ineffective assistance of counsel, a defendant must satisfy the two-prong test established in Strickland.[2]

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.
>
> [Strickland, 466 U.S. at 687.]

"The United States Supreme Court has applied the Strickland test to challenges of guilty pleas based on ineffective assistance of counsel." State v. DiFrisco, 137 N.J. 434, 456 (1994) (citing Hill v. Lockhart, 474 U.S. 52, 58 (1985)).

> To set aside a guilty plea based on ineffective assistance of counsel, a defendant must show that (i) counsel's assistance was not "within the range of competence demanded of attorneys in criminal cases," Tollett v. Henderson, 411 U.S. 258, 266 (1973); and (ii) "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pled

---

[2] The New Jersey Supreme Court adopted the Strickland standard in State v. Fritz, 195 N.J. 42, 58 (1987).

guilty and would have insisted on going to trial."  Hill,
474 U.S. at 59.

[Ibid. (alteration in original).]

Watkins contends that counsel's representation was deficient because "the PCR evidentiary hearing failed to establish that defense counsel apprised Watkins that a motion to suppress had been filed, and that the motion, which had a reasonable likelihood of success, would be withdrawn as a condition of his guilty pleas . . . ."  We disagree.

When a guilty plea is contested, counsel's performance is not deficient if "a defendant considering whether or not to plead guilty to an offense receives correct information concerning all of the relevant material consequences that flow from such a plea."  State v. Agathis, 424 N.J. Super. 16, 22 (App. Div. 2012) (citing State v. Nunez-Valdez, 200 N.J. 129, 138 (2009)).  Judge Bennion found counsel made strategic and tactical decisions, following a proper investigation, and after thorough consultation with Watkins.  These findings are amply supported in the record and will not be disturbed.

Moreover, Watkins asserts he "was prejudiced by counsel's conduct because there was a 'reasonable probability' that, but for counsel's errors, he would not have withdrawn the suppression motion and pleaded guilty."  To meet the second Strickland prong Watkins must demonstrate that he would not have

withdrawn the suppression motion or pleaded guilty, and he would have insisted on going to trial. See DiFrisco, 137 N.J. at 457. Further, Watkins must establish that his "decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010). Here, Watkins has not met this burden.

As Judge Bennion found, the plea agreement resolving both of Watkin's pending indictments was favorable, considering Watkins could have been convicted of numerous pending charges and had exposure for multiple consecutive sentences. Moreover, as the judge observed, aside from the gun, the State had additional evidence that implicated Watkins. Under these facts, we are satisfied Judge Bennion correctly concluded Watkins failed to show a decision to go to trial would have been rational.

To the extent we have not addressed any of Watkins' remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13