**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0140-23

NEW JERSEY DEPARTMENT OF
ENVIRONMENTAL PROTECTION,
COMMISSIONER OF THE NEW
JERSEY DEPARTMENT OF
ENVIRONMENTAL PROTECTION,
and THE ADMINISTRATOR OF
THE NEW JERSEY SPILL
COMPENSATION FUND,

     Plaintiffs-Appellants,

v.

HARSHAD M. DESAI, DINESH R.
DESAI, and HIRO B. PAHLAJANI,

     Defendants-Respondents.

_____

Argued August 27, 2024 – Decided April 25, 2025

Before Judges Gooden Brown, DeAlmeida and Marczyk.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-1161-23.

Bethanne S. Prugh, Deputy Attorney General, argued the cause for appellants (Matthew J. Platkin, Attorney

General, attorney; Sookie Bae-Park, Assistant Attorney General, of counsel; Bethanne S. Prugh, on the briefs).

Vinita Banthia argued the cause for respondents (Archer & Greiner, PC, attorneys; Vinita Banthia, on the brief).

The opinion of the court was delivered by

DeALMEIDA, J.A.D.

Plaintiffs New Jersey Department of Environmental Protection (DEP), its Commissioner, and the Administrator of the New Jersey Spill Compensation Fund appeal from the August 4, 2023 Law Division order dismissing as untimely their complaint seeking remediation of a contaminated industrial property and damages for costs incurred by DEP with respect to remediation of the property. We reverse.

## I.

Defendants Harshad M. Desai, Dinesh R. Desai, and Hiro B. Pahlajani are former owners of an industrial property in Camden (the Site).[1]  In 1983, defendants' company, International Customer Corporation (ICC), began using

---

[1] Prior to argument, defendants' counsel informed the court that Dinesh R. Desai died.  On May 20, 2024, defendants' counsel submitted a consent order to the Law Division substituting Sunil Misra, the personal representative and executor of the Estate of Dinesh R. Desai, as a defendant pursuant to Rule 4:34-1(b).  We have not received notice with respect to whether the Law Division has entered the consent order.

the Site to operate a solvent repacking business. ICC stored and repackaged chemicals classified as hazardous substances at the Site. Defendants' closure of ICC in 1987 triggered their statutory obligations under what was then named the Environmental Cleanup Responsibility Act (ECRA), N.J.S.A. 13:1K-6 to -13, to investigate contamination at the Site and remediate hazardous substances discharged there.[2]

On March 17, 1987, ICC submitted to DEP a general information submission and site evaluation submission as an initial step in its compliance with ECRA. On or about April 18, 1987, after an episode of vandalism, four fifty-five-gallon drums were discovered leaking unknown substances onto the ground at the Site, thereby implicating defendants' investigation and remediation obligations under the New Jersey Spill Compensation and Control Act (Spill Act), N.J.S.A. 58:10-23.11 to -23.24.

On August 16, 1988, DEP inspected the Site. All aboveground storage tanks, except for three empty tanks on the second floor of the building on the Site, had been removed. However, staining was found throughout the Site,

---

[2] In 1993, the Legislature amended ECRA and renamed it the Industrial Site Recovery Act (ISRA).

evincing that a number of spills had occurred. In addition, several unknown substances remained at the Site.

On November 23, 1988, ICC submitted a soil sampling report to DEP that revealed samples taken from two locations at the Site showed petroleum hydrocarbon contamination. In May 1990, ICC submitted another sampling report showing soil contamination involving at least eight hazardous substances, including arsenic and tetrachloroethene (PCE), in concentrations exceeding DEP's soil cleanup criteria. On March 4, 1992, DEP notified defendants of their ECRA obligation to remediate the Site.

On September 22, 1994, DEP and defendants executed a memorandum of agreement (MOA) allowing ICC to conduct a remedial investigation and remediation at the Site with oversight by DEP. The MOA established a timeline for ICC to submit to DEP various remedial investigation documents. DEP agreed to review the documents and inform ICC of any deficiencies it found.

Pursuant to the MOA, on March 2, 1995, Harshad[3] submitted a remedial investigation report (RIR) to DEP. On April 6, 1995, DEP deemed the RIR deficient because it did not address the presence of certain contamination found

---

[3] Because two of the defendants share a surname, we refer to Harshad Desai by his first name. No disrespect is intended.

A-0140-23

in the soil at the Site and failed to properly address the scope of the groundwater contaminant migrating offsite. DEP sent a letter to defendants requesting submission of alternate recommendations to address conditions at the Site. Defendants failed to respond to that inquiry.

On October 3, 1995, DEP terminated the MOA. DEP informed defendants that future remedial activities at the Site would be performed at defendants' peril and the Site would be placed on DEP's list for remediation by DEP at defendants' expense.

On June 18, 1996, at defendants' request, DEP reinstated the MOA. Defendants, however, again failed to fulfill their obligations under the agreement. On March 18, 1998, DEP again terminated the MOA.

DEP's technical advisors communicated by letter with Harshad and defendants' environmental contractors over several years, giving detailed descriptions of the deficiencies with defendants' remedial actions at the Site, and providing comment, feedback, and direction as to the Site's remediation. In 2010, DEP informed defendants of their obligations under the Site Remediation Reform Act (SRRA), N.J.S.A. 58:10C-1 to -29, to hire a licensed site

remediation professional (LSRP) for the Site.[4]  Defendants thereafter took no steps to comply with their statutory obligations to remediate the Site and did not hire an LSRP.

On April 20, 2023, plaintiffs filed a complaint against defendants in the Law Division pursuant to ISRA and the Spill Act to compel remediation of the Site and for reimbursement of the costs and damages DEP has incurred and will incur due to defendants' failure to fulfill their statutory obligations to remediate the Site.[5]

On June 23, 2023, defendants moved to dismiss the complaint under Rule 4:6-2(e), arguing, among other things, that it was untimely and plaintiffs' claims were barred by laches.  N.J.S.A. 58:10B-17.1(a)(1) provides that a cause of action concerning the remediation of property must be filed within three years after the accrual of the cause of action.  The statute further provides that the cause of action shall not be deemed to have accrued "until the contaminated site

---

[4]  SRRA, enacted in 2009, see L. 2009, c. 60, overhauled the site remediation process but did not alter defendants' obligation to remediate the Site.

[5]  In August 1990, the City of Camden acquired the Site through a municipal tax foreclosure.  The transfer of title did not affect defendants' statutory obligations to remediate the Site.  On August 5, 1991, the building at the Site was destroyed in a fire.

A-0140-23

is remediated," or January 1, 2002, whichever is later. N.J.S.A. 58:10B-17.1(a)(2).

Defendants argued plaintiffs' cause of action accrued when defendants ceased the remediation process for the Site decades before plaintiffs filed the complaint. Defendants argued accrual occurred when remediation efforts were halted, even if that remediation was never completed. Because defendants' remediation efforts stopped before January 1, 2002, the earliest accrual date permitted by the statute, defendants argued the three-year statute of limitations on plaintiffs' claims began on January 1, 2002 and expired on January 1, 2005, more than eighteen years before the complaint was filed.

Plaintiffs opposed the motion, arguing that the cause of action for a remediation claim accrues when the remediation of the subject property is completed. Thus, plaintiffs argued, because the Site remains contaminated, the three-year period in N.J.S.A. 58:10B-17.1(a)(1) has not commenced and the complaint was timely filed.

On August 4, 2023, the trial court issued an oral decision granting defendants' motion and dismissing the complaint as untimely. The court interpreted N.J.S.A. 58:10B-17.1(a)(2) to mean that plaintiffs' cause of action accrued on the day "any portion of remedial action" began on the Site. Thus,

7

the court concluded, plaintiffs' claims accrued when defendants undertook their first steps at remedial action decades before January 1, 2002.[6] Given the statutory mandate that plaintiffs' cause of action cannot accrue prior to January 1, 2002, the court found the three-year limitation period began to run on January 1, 2002 and expired on January 1, 2005, eighteen years prior to the filing of the complaint.

In reaching its decision, the court found N.J.S.A. 58:10B-17.1(a)(2) to be ambiguous and resorted to extrinsic aids to determine the meaning of "until the contaminated site is remediated." The court compared N.J.S.A. 58:10B-17.1(a)(2) to another subsection of the statute, N.J.S.A. 58:10B-17.1(b)(2), which applies to claims for natural resources damages (NRD). That provision states the cause of action for NRD claims shall not be deemed to have accrued "until the completion of the remedial action for the entire contaminated site . . . ." The court reasoned that had the Legislature meant for remediation claims to accrue when the remediation of a subject property was completed, it would have used the language it used in N.J.S.A. 58:10B-17.1(b)(2). Thus, the court

---

[6] The court did not make findings with respect to a specific date on which plaintiffs' claims accrued or the specific action of defendants that caused the accrual of plaintiffs' claims. The court appears to have rejected defendants' argument that plaintiffs' cause of action accrued when defendants halted remediation actions at the Site.

A-0140-23

reasoned, the Legislature must have intended for the cause of action to accrue under N.J.S.A. 58:10B-17.1(a)(2) at an early point in the remediation process.

The court also relied on the definition of "[r]emediation" and "[r]emediate" in N.J.S.A. 58:10B-1. That statute provides that "'[r]emediation' or '[r]emediate' means all actions to investigate, clean up, or respond to any known, suspected, or threatened discharge of contaminants, including the preliminary assessment, site investigation, remedial investigation, and remedial action, or any portion thereof . . . ." N.J.S.A. 58:10B-1. The court concluded that "any portion thereof" includes any step taken to initiate the remediation of property. Thus, the court concluded plaintiffs' cause of action accrued when defendants took the first steps to remediate the Site.

An August 4, 2023 order granted defendants' motion to dismiss the complaint.[7]

This appeal follows. Plaintiffs argue the trial court erred because: (1) the plain language of N.J.S.A. 58:10B-17.1(a)(2) provides that remediation claims do not accrue until the remediation of the subject property is completed; and (2)

_____

[7] Although the court expressed doubts about the strength of defendants' laches argument, it also stated that an evidentiary hearing might be necessary to determine if plaintiffs' claims are barred by laches. As we understand the record, the court did not issue a decision on defendants' laches argument.

when enacting N.J.S.A. 58:10B-17.1(a)(2), the Legislature intended to extend the time for DEP to bring remediation claims, and the court's interpretation of the statute is contrary to that intent.

Although defendants defend the validity of the August 4, 2023 order, they argue, contrary to the conclusion of the trial court, that plaintiffs' cause of action accrued under N.J.S.A. 58:10B-17.1(a)(2) when defendants stopped remediating the Site.

II.

We owe "no deference to a trial court's legal determinations when no issue of fact exists, . . . [and] review de novo a trial court's decision to dismiss a complaint as barred by a statute of limitations." Barron v. Gersten, 472 N.J. Super. 572, 576 (App. Div. 2022); see also Smith v. Datla, 451 N.J. Super. 82, 88 (App. Div. 2017) ("[W]hen analyzing pure questions of law raised in a dismissal motion, such as the application of a statute of limitations, we undertake a de novo review.").

It is well-settled that the primary purpose of "statutory interpretation is to determine and 'effectuate the Legislature's intent.'" State v. Rivastineo, 447 N.J. Super. 526, 529 (App. Div. 2016) (quoting State v. Shelley, 205 N.J. 320, 323 (2011)). We start by considering "the plain 'language of the statute, giving the

10

terms used therein their ordinary and accepted meaning.'" Ibid. (quoting Shelley, 205 N.J. at 323). Where "the Legislature's chosen words lead to one clear and unambiguous result, the interpretive process comes to a close, without the need to consider extrinsic aids." Ibid. (quoting Shelley, 205 N.J. at 323).

We do "not 'rewrite a plainly-written enactment of the Legislature [or] presume that the Legislature intended something other than that expressed by way of the plain language.'" Id. at 529-30 (alteration in original) (quoting Marino v. Marino, 200 N.J. 315, 329 (2009)). However, "[a]n enactment that is part of a larger statutory framework should not be read in isolation, but in relation to other constituent parts so that a sensible meaning may be given to the whole of the legislative scheme." Vitale v. Schering-Plough Corp., 447 N.J. Super. 98, 115 (App. Div. 2016) (quoting Wilson ex rel. Manzano v. City of Jersey City, 209 N.J. 558, 572 (2012)).

The general rule of statutory construction requires that "words and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language." N.J.S.A. 1:1-1.

We, therefore, begin our analysis with the text of N.J.S.A. 58:10B-17.1(a). The statute provides:

> (1)     Except where a limitations provision expressly and specifically applies to actions commenced by the State or where a longer limitations period would otherwise apply, and subject to any statutory provisions or common law rules extending limitations periods, any civil action concerning the remediation of a contaminated site or the closure of a sanitary landfill facility commenced by the State pursuant to the State's environmental laws shall be commenced within three years next after the cause of action shall have accrued.
>
> (2)     For purposes of determining whether a civil action subject to the limitations periods specified in paragraph (1) of this subsection has been commenced within time, no cause of action shall be deemed to have accrued prior to January 1, 2002 or until the contaminated site is remediated or the sanitary landfill has been properly closed, whichever is later.
>
> [N.J.S.A. 58:10B-17.1(a).]

The operative provision of the statute for purposes of determining the timeliness of the complaint is that plaintiffs' cause of action shall not be deemed to have accrued "until the contaminated site is remediated." The common-sense understanding of that phrase is that the cause of action will not be deemed to have accrued until the remediation of the Site is completed. Nothing in the plain language of the statute suggests that plaintiffs' cause of action accrued on the day the remediation process started, at some point while remediation of the

property was ongoing, or when defendants abandoned their remediation of the property before it was concluded. The Legislature's use of the past tense of the verb "remediate" evinces its intent to indicate the conclusion of an undertaking – in this case the completion of the remediation of the Site. See In re K.O., 217 N.J. 83, 94 (2014) (noting the Legislature's choice of verb tense to conclude that a juvenile's pending adjudication did not count as one of the two prior offenses that would qualify the juvenile for an extended term commitment). See also, Sutherland Statutory Construction § 21:10 ("More broadly, courts often look to a legislature's choice of verb tense to ascertain a statute's temporal reach."). Had the Legislature intended for plaintiffs' cause of action to accrue at the commencement of remediation, it could have used the phrase "when remediation begins." It did not do so. If its intention was to permit accrual during the remediation process or when the party responsible for the remediation abandoned remediation efforts, it could have plainly so stated. It did not draft the statute in that fashion. The Legislature instead chose to provide that for purposes of the three-year limitations period, the State's cause of action relating to contaminated property shall be deemed to accrue no earlier than when the remediation process concludes.

A-0140-23

The plain meaning of N.J.S.A. 58:10B-17.1(a)(2) is underscored by the phrase the Legislature used in the same subsection to define the accrual date for claims relating to the closure of a sanitary landfill facility. Claims of that nature shall not be deemed to have accrued until "the sanitary landfill has been properly closed." Again, the Legislature evinced an intent for the claims not to accrue until there is no further action required by the party responsible for closing the sanitary landfill facility.

Given the unequivocal language in N.J.S.A. 58:10B-17.1(a)(2), it was error for the trial court to resort to intrinsic aides to glean the meaning of the statute. There was no need for the trial court to turn to N.J.S.A. 58:10B-17.1(b)(2) or the definition of "[r]emediation" and "[r]emediate" in N.J.S.A. 58:10B-1 to determine the meaning of N.J.S.A. 58:10B-17.1(a)(2). Under the plain language of the statute, at the time plaintiffs filed their complaint, the three-year statute of limitations established in N.J.S.A. 58:10B-17.1(a)(1) had not begun to run because the remediation of the Site has not been completed.

Even if we were to consider extrinsic sources to interpret N.J.S.A. 58:10B-17.1(a), the sources on which the trial court relied do not support its conclusion plaintiffs' cause of action accrued when defendants took initial steps in the remediation process that they abandoned soon thereafter. N.J.S.A. 58:10B-17.1

became effective on July 31, 2001. From the date of its enactment to today, N.J.S.A. 58:10B-17.1(a)(2) has stated that the cause of action for remediation claims does not accrue "until the contaminated site is remediated." Compare L. 2001, c. 154, § 5 to N.J.S.A. 58:10B-17.1(a)(2).

The Legislature has amended N.J.S.A. 58:10B-17.1 four times, but has never changed N.J.S.A. 58:10B-7.1(a). See L. 2005, c. 4, § 2; L. 2005, c. 245, § 1; L. 2009, c. 60, § 50; L. 2012, c. 45, § 136. Three of the amendments revised N.J.S.A. 58:10B-17.1(b). With each revision, the Legislature extended the time for accrual of a cause of action for NRD claims. Originally, such claims did not accrue "until the performance of the preliminary assessment, site investigation, and remedial investigation, if necessary, of the contaminated site . . . ." L. 2001, c. 154, § 5.

In January 2005, the Legislature amended N.J.S.A. 58:10B-17.1(b)(2) to provide that an NRD cause of action does not accrue until the "completion of the remedial investigation of the contaminated site or sanitary landfill facility." L. 2005, c. 4, § 2. The amendment added the term "completion" to the latest required investigatory report and removed the events that occur earlier in time in the remediation process. These two amendments extended the accrual time further from the discovery of the discharge.

In December 2005, the Legislature again amended N.J.S.A. 58:10B-17.1(b)(1) and extended the statute of limitations for NRD claims from four years to five years and six months. L. 2005, c. 254, § 1.

Finally, in May 2009, the Legislature amended N.J.S.A. 58:10B-17.1(b)(2) to provide that an NRD cause of action shall not be deemed to have accrued until "completion of the remedial action for the entire contaminated site or the entire sanitary landfill facility . . . ." L. 2009, c. 60, § 50. With the 2009 amendment, the Legislature placed the accrual of the cause of action further from the discharge, to after all remediation has been completed.[8]

With each of these amendments, the Legislature revised N.J.S.A. 58:10B-17.1(b) to more closely align the timing of the accrual of a cause of action in that subsection with accrual language in N.J.S.A. 58:10B-17.1(a). The 2009 amendment brought the two subsections of the statute into alignment by providing that contamination claims shall not be deemed to have accrued "until the contaminated site is remediated," and NRD claims shall not be deemed to have accrued until "completion of the remedial action for the entire contaminated site." The evolution of N.J.S.A. 58:10B-17.1(b) likely explains

_____

[8] The fourth amendment to N.J.S.A. 58:10B-17.1 in 2012 only removed the University of Medicine and Dentistry of New Jersey from the definition of State in N.J.S.A. 58:10B-17.1(c). L. 2012, c. 45, § 136.

16

why the accrual language in the two subsections is not identical, even though their purpose to link the accrual date of claims to the completion of remediation is the same.

In addition, the trial court's reliance on the definitions of "[r]emediation" and "[r]emediate" in N.J.S.A. 58:10B-1 to interpret the phrase "is remediated" in N.J.S.A. 58:10B-17.1(a)(2) was error. First, "[r]emediation" and "[r]emediate" in N.J.S.A. 58:10B-1 refer to the ongoing remediation process, which naturally includes many steps involved in identifying and remediating contamination. "[I]s remediated" in N.J.S.A. 58:10B-17.1(a)(2), on the other hand, uses the past tense of the verb to denote the conclusion of the remediation process. The interim steps undertaken on the path to a concluded remediation of contaminated property, while relevant to the definitions of "[r]emediation" and "[r]emediate[,]" are not germane to the conclusive term "is remediated."

We note as well that the phrase "or any portion thereof" in the definitions of "[r]emediation" and "[r]emediate[,]" on which the trial court relied in its interpretation of N.J.S.A. 58:10B-17.1(a)(2), was added to N.J.S.A. 58:10B-1 in 2019, eighteen years after the Legislature enacted N.J.S.A. 58:10B-17.1(a)(2). See L. 2019, c. 263, § 6. Thus, when enacting N.J.S.A. 58:10B-17.1(a)(2), the Legislature could not have intended to incorporate a phrase it added to a

different statute eighteen years later. In addition, the legislative history of the 2019 amendment to N.J.S.A. 58:10B-1 indicates that "or any portion thereof" was added to expand the LSRP responsibilities listed elsewhere in SRRA at N.J.S.A. 58:10C-16(k).[9] There is no evidence the amendment of N.J.S.A. 58:10B-1 to include "or any portion thereof" was intended to have an impact on the accrual of contamination claims under N.J.S.A. 58:10B-17.1(a)(2).

Additionally, before the enactment of N.J.S.A. 58:10B-17.1(a)(2), the statute of limitations for civil actions brought by the State was ten years from the accrual of the cause of action. N.J.S.A. 2A:14-1.2. At the time, discovery of a discharge triggered the ten-year limitations period. By enacting N.J.S.A. 58:10B-17.1(a)(2), the Legislature intended to make it easier, not more difficult, for the State to bring remediation claims. The bill "would extend and change the statute of limitations for civil actions brought by the State pursuant to laws concerning the remediation of contaminated sites or the closure of sanitary

---

[9] The Assembly Environment and Solid Waste Committee to Assembly N. 5293 provided an explanation that the added language was intended to expand the LSRP's responsibilities: "[t]he bill provides that, if an LSRP who is retained to perform remediation at a site or any portion of a site obtains specific knowledge that a discharge has occurred at any location on the site, the LSRP must notify the person responsible for conducting the remediation and the DEP." Assemb. Env't & Solid Waste Comm. Statement to A. 5239 (L. 2019, c. 263) (emphasis added).

landfill facilities . . . ." Sponsor's Statement to Senate Bill No. 2345 (L. 2001, c. 154). By providing that contamination claims shall not be deemed to have accrued "until the contaminated site is remediated[,]" the Legislature moved the accrual date from the beginning of what is often a long remediation process to the conclusion of that process. The trial court's interpretation of N.J.S.A. 58:10B-17.1(a)(2) contradicts the legislative intent when adopting the statute.

Reversed and remanded for entry of an order denying defendants' motion to dismiss the complaint as untimely and for further proceedings consistent with this opinion.[10] We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

---

[10] Defendants argue we should decide whether plaintiffs' claims are barred by laches. As noted above, our review of the record indicates the trial court did not issue a decision with respect to defendants' laches argument. Thus, defendants, in effect, request we exercise our original jurisdiction to decide their laches argument. See N.J. Const. art. VI, § 5, ¶ 3; R. 2:10-5. We exercise original jurisdiction sparingly. State v. Micelli, 215 N.J. 284, 293 (2013). Generally, the exercise of original jurisdiction is disfavored when fact-finding is necessary. Price v. Himeji, LLC, 214 N.J. 263, 294-95 (2013). On remand, the trial court, which suggested fact-finding might be necessary, shall consider defendants' motion to dismiss the complaint based on laches. We leave to the sound discretion of the trial court whether an evidentiary hearing and additional briefing is necessary to decide the motion. We offer no view on the outcome of defendants' motion.

A-0140-23